UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

No.: 3-06 CV 1286 (AVC)

| | |
|---|---|
| BLERON BARALIU, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| VINYA CAPITAL, L.P., and | ) |
| MICHAEL deSa, | ) |
| Defendants | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

**Preliminary Statement**

Defendants Vinya Capital, L.P. ("Vinya") and Michael deSa ("deSa") (collectively, "Defendants"), by their attorneys Sapirstein & Sapirstein, P.C., respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 12(b)(3), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, dismissing the complaint herein (the "Complaint") on the grounds of improper venue, failure to state a claim, and failure to plead fraud with particularity.

**BACKGROUND**

The Complaint alleges claims against Defendants that arise under, or in connection with, a written employment agreement that contains a *mandatory forum selection clause* designating the United States District Court for the Southern District of New York or the state courts of New York as the exclusive forum and jurisdiction for this action. A copy of the Complaint is attached hereto as Exhibit "A".

1

The Complaint asserts eight causes of action – breach of contract (Counts One through Four), fraud and misrepresentation (Count Five), wrongful termination and defamation (Count Six), intentional infliction of emotional distress (Count Seven), and violation of the Connecticut Unfair Trade Practices Act (Count Eight).

Count One of the Complaint alleges that plaintiff "entered into [an employment] contract with VINYA and DESA" on September 7, 2004. Complaint, ¶ 6. A copy of this contract (the "Employment Agreement") is attached hereto as Exhibit "B". It provides in pertinent part:

> [The parties], without regard to domicile, citizenship or residence, hereby expressly and irrevocably submit to, as the *exclusive forum* for the determination of all disputes arising under or in connection with this Letter Agreement, the jurisdiction of the United States District Court for the Southern District of New York and the jurisdiction of any court of the State of New York

Employment Agreement, ¶ 13(b) (italics added).

The Complaint alleges additional breach of contract claims (Counts Two through Four) arising out of "further contractual relationships" between the parties. See Complaint, ¶ 7. These contractual relationships are based on an addendum a copy of which is attached hereto as Exhibit "C" that amends the original Employment Agreement only to the extent that it conflicts with the original Employment Agreement. This addendum is silent as to the forum for disputes arising under or in connection therewith. Since there is no conflict between the addendum and the forum selection clause in the original agreement, that clause remains in effect with respect to the Employment Agreement, even as amended by the addendum.

2

The Complaint also alleges a fraud claim (Count Five) based on alleged misrepresentations that induced plaintiff to forego payment of bonuses and ownership grants promised in the Employment Agreement and the addendum thereto.  As this claim is a "dispute[] arising …. in connection with" those documents, it too is subject to the mandatory forum selection clause.

As set forth below, the Complaint must be dismissed in its entirety. Counts One through Five must be dismissed on account of plaintiff's disregard of the forum selection clause mandating that these claims be brought in a state or federal court in New York.  The fraud claim (Count Five) must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to plead that claim with particularity.  Plaintiff's claims for wrongful termination and defamation (Count Six), intentional infliction of emotional distress (Count Seven), and violation of the Connecticut Unfair Trade Practices Act (Count Eight) also fail to state a claim, requiring dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### POINT I

**THE COMPLAINT MUST BE DISMISSED BECAUSE
THE FORUM SELECTION CLAUSE IN THE PARTIES'
AGREEMENT REQUIRES THAT PLAINTIFF BRING THIS
ACTION IN THE STATE OR FEDERAL COURTS OF NEW YORK**

It is well established that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907 (1972).  "The party claiming unreasonableness of a forum

selection clause bears a *heavy burden*; in order to escape the contractual clause, he must show 'that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'"   Juliano v. Cecil Saydah Co., 3:04CV1091, 2005 WL 475436 (D. Conn. Feb.28, 2005) (italics added) (quoting New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 32 (2d Cir.1997)); Stamm v. Barclays Bank of New York, 960 F.Supp. 724, 732 (S.D.N.Y. 1997) ("courts cannot fail to enforce contracts because they result in hardship to one party"), aff'd 153 F.3d 30 (2d Cir. 1998).

Thus, a motion to dismiss based on a plaintiff's disregard of a mandatory forum selection clause *must* be granted where the plaintiff fails to overcome the presumed enforceability of such a clause.   Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995) (reversing denial of motion to dismiss based on forum selection clause); Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989) (affirming dismissal of claims based on forum selection clause); New Moon, supra, 121 F.3d at 29 (reaffirming that forum selection clauses must be enforced unless the plaintiff makes a "strong showing" that enforcement would be "unreasonable and unjust" or that some invalidity such as fraud or overreaching is attached to it).

In Effron, supra, the defendant moved to dismiss the complaint pursuant to a forum selection clause in the parties' agreement requiring that "any action against the Carrier must be brought only before the courts of Athens[,] Greece."   Effron, supra, 67 F.3d at 8.   On appeal from the district court's denial of the motion, the Second Circuit reversed and remanded "with instructions to dismiss the complaint against [the defendant] subject to the right to refile the complaint in the courts of Athens, Greece."

<u>Effron</u>, <u>supra</u>, 67 F.3d at 11.  The Second Circuit rejected the plaintiff's argument that enforcement of the forum selection clause would violate notions of fundamental fairness.

> There is no evidence that [defendant] obtained [plaintiff's] accession to the forum clause by fraud or overreaching [or that defendant] designated Greece as the forum to "discourag[e] cruise passengers from pursuing legitimate claims." … We disagree with the district court's assertion that enforcement of the forum-selection clause would effectively deprive plaintiff of her "day in court" within the traditional meaning of the quoted phrase…. "[T]he right to a day in court means not the actual presentation of the case, but the right to be duly cited to appear and to be afforded an opportunity to be heard."  A plaintiff may have his "day in court" without ever setting foot in a courtroom.

<u>Effron</u>, <u>supra</u>, 67 F.3d at 10, 11 (internal citations omitted).

In <u>Juliano</u>, <u>supra</u>, the parties' agreement contained a forum selection clause requiring that any lawsuit arising under the contract containing the clause be brought in California.  Despite this clause, the plaintiff filed the action in Connecticut.  This Court granted the defendant's motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(3), finding that the plaintiff had failed to show that the selected forum (California) was unfair or would cause such grave inconvenience that the plaintiff would "for all practical purposes be deprived of his day in court," that the choice of law might deprive the plaintiff of a remedy, that the clause contravened a strong public policy of the forum state (Connecticut), or that the clause was incorporated into the agreement as a result of fraud or overreaching.  This Court rejected the plaintiff's argument that "forum selection clauses in an employer and employee relationship should be unenforceable per se", finding "no support in this circuit" for such a position.  <u>Juliano</u>, <u>supra</u>, 2005 WL 475436 at *2.

Moreover, this Court dismissed the action even though Connecticut was a more convenient forum for plaintiff than California. "[P]laintiff does not explain how he is unable to pursue his claims in California. He has retained counsel in Connecticut, and presumably would be able to retain counsel in California. Plaintiff has not demonstrated that litigating his claims in the forum mandated by the [agreement] would deprive him of his right to pursue these claims altogether." Juliano, supra, 2005 WL 475436 at *2.

Here, there is no dispute that the parties expressly agreed to litigate any disputes arising under or in connection with their employment agreement in the state or federal courts of New York. The complaint alleges that plaintiff "entered into a contract with VINYA and DESA" on September 7, 2004. Complaint, ¶ 6. A copy of this agreement is attached hereto as Exhibit "B".[1] It provides in pertinent part:

> [The parties], without regard to domicile, citizenship or residence, hereby expressly and irrevocably submit to, as the *exclusive forum* for the determination of all disputes arising under or in connection with this [Employment Agreement], the jurisdiction of the United States District Court for the Southern District of New York and the jurisdiction of any court of the State of New York.

Employment Agreement, ¶ 13(b) (italics added).

Although convenience is not even a factor in deciding a motion to dismiss based on a forum selection clause, in the instant case the forum selected in the parties'

---

[1] Defendants' use of this document and the addendum thereto as exhibits to this motion to dismiss does not convert this motion into a Rule 56 motion for summary judgment. Where, as here, a plaintiff chooses not to attach pertinent documents that are integral to the complaint, the defendant may introduce the documents as exhibits to its motion attacking the pleading. Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991); 5 C. Wright & A. Miller, Federal Practice & Procedure § 1327, at 489 & n.15. See also Stamm v. Barclays Bank of New York, 960 F.Supp. 724, 730 (S.D.N.Y. 1997) (in deciding a motion to dismiss based on a forum selection clause, "it is

agreement – New York – is clearly more convenient than California was to the plaintiff in <u>Juliano</u>, supra.  Indeed, the New York courts are closer to plaintiff in the instant case than this Court situated in Hartford, Connecticut is.   As set forth in the Complaint, plaintiff is a resident of Millburn, New Jersey, a suburb of New York City.  Complaint, ¶ 3.  In order to get to Hartford, Connecticut, plaintiff necessarily has to travel through New York.  Clearly, New York is a more convenient location to litigate this matter than Hartford, Connecticut.  Moreover, as reflected by the addresses for plaintiff set forth in the Employment Agreement and the addendum thereto, plaintiff was a resident of New York at the time he entered into the agreement and signed the addendum. In addition, plaintiff has neither alleged nor shown any other basis for overcoming the presumption of enforcement of the forum selection clause.

Plaintiff's assertion of a fraud claim in Count Five has no bearing on the enforcement of the forum selection clause with respect to the contractual claims (Counts One through Four).  The fraud claim does not allege that any misrepresentations were made to induce him to enter into the original Employment Agreement containing the forum selection clause.   That claim merely asserts, albeit conclusorily, that misrepresentations were made "during the term of his employment", <u>i.e.</u>, <u>after he had already signed</u> the Employment Agreement containing the forum selection clause.  Complaint, ¶ 18.  Even if plaintiff claimed that Defendants made false misrepresentations to induce him to sign the original agreement, this would still provide no basis for refusing to enforce the forum selection clause in that agreement.

---

appropriate to consider documents upon which the complaint relies and which are integral to the complaint … without converting the motion to one for summary judgment"), <u>aff'd</u> 153 F.3d 30 (2d Cir. 1998).

> A claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice-of-law clause found in that contract.   Rather, *it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud*…. [T]o overcome the presumed validity of [these] clauses, plaintiffs must plead specific fraudulent acts or statements by which defendants induced their consent to *these clauses*.   As with all claims of fraud, plaintiffs' claims must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

Stamm v. Barclays Bank of New York, 960 F.Supp. 724, 732 (S.D.N.Y. 1997) (italics added), aff'd 153 F.3d 30 (2d Cir. 1998).  Here, the Complaint does not allege even conclusorily, let alone with particularity, that the inclusion of the forum selection clause *within* the Employment Agreement was induced by fraud.

Moreover, the fraud claim itself (Count Five) is subject to the forum selection clause since the broad language of paragraph 13(b) covers "all disputes arising under or in connection with" the Employment Agreement.  See AVC Nederland B.V. v. Atrium Investment Partnership, 740 F.2d 148 (2d Cir. 1984) (holding that a forum selection clause vesting exclusive jurisdiction of "all disputes relating to or arising from the [a]greement [was] sufficiently broad to include a claim of fraud") (emphasis added).

This Court should therefore enforce the forum selection clause, and should do so by dismissing the Complaint rather than by transferring the case to the district court in the Southern District of New York.  In GMAC Commercial Credit, LLC v. Dillard Department Stores, Inc., 198 F.R.D. 402 (S.D.N.Y. 2001), the court granted the defendant's motion to dismiss based on the following mandatory forum selection clause, the substance of which is analogous to the clause in the instant case.

> Any controversy or claim *arising out of or relating to this Agreement* shall be settled by suit brought in Pulaski

8

> County, Arkansas. The law of Arkansas shall apply. Seller hereby submits itself to the personal jurisdiction of the State of Arkansas and agrees that the *exclusive jurisdiction* of any controversy or claim shall be in the Courts of the State of Arkansas, Pulaski County or the United States District Court for the Eastern District of Arkansas.

GMAC, supra, 198 F.R.D. at 404 n.3 (italics added). The court held that transfer, as opposed to dismissal, was unwarranted.

> Determining whether to dismiss or transfer depends upon which remedy is most consistent with the forum selection clause at issue. If, for example, the forum selection clause only authorized suit in the United States District Court for the Eastern District of Arkansas, without reference to the Arkansas state courts, then a transfer of venue to another federal district court would be adequate to enforce the contracting parties' agreement. However, the forum selection clause in this case permits suit to be brought in both the federal district court and in state courts. Therefore, to transfer venue in this case, this court would be depriving plaintiff of its right under the forum selection clause of this contract to bring suit in either state or federal court…. Because dismissal preserves plaintiff's decision to file in the state or federal courts of Arkansas, this court dismisses this action without prejudice to refiling the action in the state courts of Pulaski County, Arkansas or the United States District Court for the Eastern District of Arkansas.

GMAC, supra, 198 F.R.D. at 409 (emphasis added). This Court too has recognized that dismissal, as opposed to transfer, is warranted where the forum selection clause – mandatory as to location – provides a choice between the state and federal courts in that location. See Vertucci v. Orvis, No. 3:05CV1307, 2006 WL 1688078 at *8 (D. Conn. May 30, 2006) ("dismissal may be appropriate where a party disregards a forum selection clause and brings suit in a noncompliant venue, *especially where the forum selection clause allows suit both in state and federal courts*. [This is because dismissal] would

preserve Plaintiff's right to file suit in either state or federal court") (italics added); <u>Licensed Practical Nurses v. Ulysses Cruises, Inc.</u>, 131 F.Supp.2d 393, 407 (S.D.N.Y. 2000) ("[w]hat is clear under the contract, in other words, is not where the case must be brought, since it offers a choice of fora to plaintiff, but where it must not be brought-- which includes this court and the New York state courts.  Dismissal thus might well be the remedy most in keeping with the intentions of the parties as provided in the contract").

        In the instant case, the parties expressly agreed in the Employment Agreement to submit to the jurisdiction of <u>both</u> the state courts of New York and the United States District Court for the Southern District of New York "as the <u>exclusive forum</u> for the determination of all disputes arising [there]under or in connection [there]with …."  Employment Agreement, ¶ 13(b) (emphasis added).  Clearly, dismissal is warranted in order to enforce the express terms of the parties' forum selection clause. The Court should therefore grant the motion to dismiss.

## POINT II

### COUNT FIVE MUST BE DISMISSED FOR <u>FAILURE TO PLEAD FRAUD WITH PARTICULARITY</u>

        In addition to dismissing the fraud claim (Count Five) based on the forum selection clause, this claim must also be dismissed because the Complaint fails to satisfy the particularity requirements for pleading fraud.

Rule 9(b) of the Federal Rules of Civil Procedure[2] requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  This means that a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58, 82 (D. Conn. 2006) (quoting Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994)).  In addition, the plaintiff "must allege facts that give rise to a 'strong inference' of fraudulent intent." Smith, supra, 415 F.Supp.2d at 83 (quoting Shields, supra, 25 F.3d at 1128).

The following three paragraphs – the sum total of plaintiff's fraud claim – fail to satisfy these particularity requirements:

> 18.   During the term of his employment VINYA, through it Principal and Owner, DESA, made knowingly false statements to BARALIU regarding the financial strength of VINYA, the amount of investment DESA had made and was continuing to make in VINYA, the amount of investments other financial institutions were making in VINYA, including that Vega Asset Management had committed to seed VINYA with an investment of $250 million, that MBIA was going to invest $50 million in Vinya Capital, L.P. and that "country EQ " was going to invest over $500 million in VINYA during 2005 and 2006.

> 19.   These statements were made by DESA on behalf of VINYA to induce BARALIU to forego payment of promised bonuses and ownership grants.  In fact, BARALIU did rely on these false statements, to his detriment, and was induced through this fraud and

---

[2] The level of specificity required for pleadings in a diversity case in federal court is governed by federal procedural rules. Stirling Homex Corp. v. Homasote Co., 437 F.2d 87, 88 n.2 (2d Cir. 1971); Retepromaca Representaciones Tecnicas Proyectos Y Sistemas, C.A. v. Ensign-Bickford Co., No. 3:98CV1857, 2004 WL 722231 at *7 n.5 (D. Conn. Mar. 30, 2004).

> misrepresentation to forego payment of promised bonuses and ownership grants.
>
> 20.    Therefore, BARALIU seeks damages of $2,000,000 from VINYA and DESA plus punitive damages and interest, costs and attorneys fees under this COUNT for fraud and misrepresentation.

These conclusory and generalized allegations fail to state with particularity the content of the representations allegedly made by deSa. They do not set forth or describe what he allegedly said concerning the financial strength of Vinya. Complaint, ¶ 18. They do not set forth what he allegedly told plaintiff concerning the amount that he had invested in, and was continuing to invest in, Vinya. Complaint, ¶ 18. Nor do they set forth what was false about *any* of the representations allegedly made by him. Complaint, ¶ 18. See Shields, supra, 25 F.3d at 1128 (to satisfy Rule 9(b), the complaint must, inter alia, "explain why the statements were fraudulent"). Further, the complaint does not identify the amount of the bonuses and nature of the ownership grants that plaintiff allegedly gave up in reliance upon these representations.

In addition, the Complaint does not plead scienter sufficiently to satisfy Rule 9(b).

> Although scienter, or fraudulent intent, may be pled generally, a plaintiff still must allege facts that give rise to a "strong inference" of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). A strong inference can be established either "(a) by alleging facts to show that defendants had both the motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

Smith, supra, 415 F.Supp.2d at 83.

Here, the Complaint does nothing more than allege conclusorily that the representations allegedly made by deSa were "false statements" and that he made them "knowingly".  Complaint, ¶ 18.  It does not allege any facts that would give rise to a "strong inference" that Defendants knew that these alleged representations were false and that Defendants had an intent to defraud.

The Complaint also makes no attempt to identify the location where the alleged statements were made, let alone identify it with specificity.  See Goudis v. American Currency Trading Corp., 233 F.Supp.2d 330, 334 (D. Conn. 2002) (allegation that defendants made misrepresentations "within the State of Connecticut" without setting forth the specific location fails to satisfy pleading requirements for fraud claim; "Vague assertions that alleged fraudulent acts occurred within a particular state are not 'particular' under any reasonable definition of that term").

Moreover, the fraud claim fails to allege the time or times of the alleged misrepresentations with particularity.  The *only* reference in Count Five concerning the timing of the alleged statements is the vague phrase "[d]uring the term of [plaintiff's] employment."  Complaint, ¶ 18.  An open ended time frame such as this does not satisfy Rule 9(b).  See United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd., 389 F.3d 1251, 1257 (D.C. Cir. 2004) (dismissing fraud claim because "the open-ended time span alleged in the complaint failed to give [defendants]" adequate notice).  This is especially the case since plaintiff does not specify the date or dates during this period on which he gave up his bonuses and ownership grants allegedly in reliance upon those

representations.  See also Goudis, supra, 233 F.Supp.2d at 333 (dismissing fraud claim alleging that misrepresentations were made "'on or about June 2000 and on various other occasions….'  Neither complaint contains the dates of specific meetings, nor identifies what was said on each occasion").

Based on the foregoing, it is clear that the fraud claim must be dismissed for lack of particularity pursuant to Rule 9(b).

**POINT III**

**COUNT SIX FAILS TO STATE A CLAIM FOR
EITHER WRONGFUL TERMINATION OR DEFAMATION**

Count Six asserts a tort claim for wrongful termination and defamation.  It claims that plaintiff's "employment was wrongfully terminated based on false claims by DESA that [plaintiff] had violated company policy and false comments about his performance."  Complaint, ¶ 21.  As shown below, the Complaint fails to state a claim for either wrongful termination or defamation.

**A.    Wrongful Termination**

The wrongful termination claim is not legally viable because plaintiff was an "at will" employee and the Complaint does not allege any facts even suggesting that his termination violated an important public policy.  There is no question that plaintiff was an "at will" employee; the Employment Agreement set forth no fixed term for plaintiff's employment and expressly designated his employment as "at will".  See Employment Agreement, ¶ 3.  Moreover, Vinya was "free to ask [plaintiff] to leave and terminate [his] employment, at any time, with or without cause."  See Employment Agreement, ¶ 3.

Under Connecticut law, an individual employed, as here, pursuant to a contract for an indefinite term is presumed to be an employee at will. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385, 386 (Conn. 1980). Such an employee can be terminated for any reason or no reason so long as the termination does not violate an important public policy. Sheets, supra, 179 Conn. 471, 474-77, 427 A.2d 385 (Conn. 1980) (recognizing that the termination of an at-will employee in violation of an important public policy is actionable as a wrongful termination); Morris v. Hartford Courant Co., 200 Conn. 676, 678, 513 A.2d 66, 67 (Conn. 1986) (there is a "narrow public policy exception to the general proposition that contracts for an indefinite term of employment are terminable at will").

To maintain a claim for wrongful discharge from at-will employment, "the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." Morris, supra, 200 Conn. at 679, 513 A.2d at 68; Gambardella v. Apple Health Care, Inc., 86 Conn.App. 842, 853, 863 A.2d 735, 743 (Conn. App. 2005) ("A cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy"). See also Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (Conn. 1987) (termination of an employee in an unreasonable and abusive manner does not violate public policy); Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *2 (Conn. Super. Aug. 26, 1993) ("not every act in derogation of a general statute, nor all conduct contrary to the common law, rises to the level of a violation of an *important* public policy") (italics in original).

A wrongful termination claim under Connecticut law cannot be based on allegations that an employer made false accusations of theft and dishonesty in connection with discharging an employee. This is so even where the plaintiff alleges that the false accusations were made intentionally and with knowledge of their falsity. Gambardella, supra, 86 Conn. App. at 852, 854, 863 A.2d at 742, 743 (affirming dismissal of wrongful termination claim; allegation that the defendants terminated the plaintiff employment for theft, but "knew at the time that the plaintiff had not committed theft" did not allege a violation of any important public policy); Reyes v. Ames Dept. Stores, Inc., 10 Conn. L. Rptr. 625, 1994 WL 30014 at *1-2 (Conn. Super. Jan. 18, 1994) (granting motion to strike wrongful discharge claim; allegations that employer maliciously and intentionally made false accusation of theft in order to discharge employee "do not rise to the level of a violation of an important public policy"); Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3 (Conn. Super. Aug. 26, 1993) (same); Fiorella v. Galena Associates, LLC, 21 Conn. L. Rptr. 58, 1997 WL 746378 at *1, 4 (Conn. Super. Nov. 21, 1997) (allegation that defendant "falsely accused the plaintiff of stealing company funds, knowing these accusations to be false … failed to allege a violation of public policy sufficient to state a cause of action for wrongful termination").

In the above cases, intentionally false accusations of criminality were insufficient to state a claim for wrongful discharge. Here, the Complaint does not even allege that Defendants accused plaintiff of criminality. It merely alleges that (a) Defendants accused plaintiff of violating some unspecified "company policy" and made comments about his performance, and (b) that these accusations and comments were false. These allegations do not implicate any conceivable "public policy" important

enough to overcome "the well established rule that an employee at will is terminable at will." <u>Rafael</u>, <u>supra</u>, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3.

Furthermore, the Complaint does not allege that Defendants knew of the falsity of the accusations and comments allegedly made by them.  Even if the Complaint alleged this, it would still be insufficient as a matter of law.  <u>See</u> <u>Sachtjen v. Saverin</u>, No. CV 990364004S, 2000 WL 38004 at *3 (Conn. Super. Jan. 5, 2000) ("[e]ven construing the facts most favorable to the plaintiff and assuming that the defendants did knowingly make false accusations [that plaintiff was involved in a business plan to compete against defendant], such actions are not sufficient to violate an important public policy").

Thus, it is clear that the Complaint does not state a claim for wrongful termination under Connecticut law.  The result is the same even if New York law is applied.3  As in Connecticut, "[w]here the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason."  <u>Lobosco v. New York Telephone Company/NYNEX</u>, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 385 (N.Y. 2001).  Unlike Connecticut, New York law does not recognize an exception to this rule, *even where termination of employment violates an important public policy.*  "New York does not recognize the tort of wrongful discharge [and] there is no exception for firings that violate public policy such as, for example, discharge for exposing an employer's illegal activities."  <u>Lobosco</u>, <u>supra</u>, 96 N.Y.2d at 316, 727 N.Y.S.2d at 385, <u>quoted</u> in <u>Cellamare v. Millbank, Tweed, Hadley & McCloy LLP</u>, No. 03-CV-0039, 2003 WL 22937683 at *9

---

3 The Employment Agreement expressly provides that New York law shall govern the construction, interpretation and enforcement thereof.  <u>See</u> Employment Agreement, § 13(a).

17

(E.D.N.Y. Dec. 2, 2003) (granting motion to dismiss); Baron v. Port Authority of N.Y. and N.J., 271 F.3d 81 (2d Cir. 2001) (noting "the clarity with which the New York Court of Appeals spoke in Lobosco").  See also Horn v. New York Times, 100 N.Y.2d 85, 96, 760 N.Y.S.2d 378, 384 (N.Y. 2003) ("We have consistently declined to create a common-law tort of wrongful or abusive discharge, or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts"); Dooley v. Metropolitan Jewish Health System, No. 02-CV-4640, 2003 WL 22171876 at *4 (E.D.N.Y. July 30, 2003) ("the New York Court of Appeals has repeatedly turned back attempts to curtail the scope of the employment-at-will rule by, for example, providing for a cause of action for wrongful discharge or for terminations that contradict public policy").

Clearly, plaintiff's "wrongful termination" claim cannot withstand the instant motion to dismiss.

## B.    **Defamation**

Plaintiff's defamation claim must be dismissed because several of the elements required for such a claim are pleaded insufficiently or not at all.

> To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217, 837 A.2d 759, 763-64 (2004); Craig v. Colonial Penn Ins. Co., 335 F.Supp.2d 296, 312 (D. Conn. 2004).

Because Rule 8 requires that a complaint afford the defendant sufficient notice of the communications complained of to enable him to defend himself, "[a] complaint is insufficient to withstand dismissal for failure to state a cause of action where, other than the bare allegation that the defendant's actions caused injury to plaintiff's reputation, the complaint sets forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made." Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115, 121 (D. Conn. 1998) (emphasis added); Forgione v. Bette, No. CV 04 4001099, 2005 WL 1545278 at *5 (Conn. Super. June 2, 2005) ("defamation must be pleaded with specificity, identifying 'what allegedly defamatory statements were made, by whom and to whom'").

> In order to respond to a claim of defamation, a defendant has to know something about the nature of the statements allegedly made. Notice of course, is an issue; perhaps equally persuasive is the need to frame pleadings appropriately. There are a number of special defenses, for example, that may or may not be appropriate, depending on the nature of the statements alleged to have been made.

Berte v. Haddam Hills Academy, Inc., 40 Conn. L. Rptr. 565, 2005 WL 3624553 at *9 (Conn. Super. Dec. 16, 2005). See also Bodgan v. Schultz, No. CV065000413, 2006 WL 2578789 at *2 (Conn. Super. Aug. 17, 2006) (granting motion to strike; complaint did "not set forth specific facts to establish what defamatory statements were actually made and to whom these statements were published").

Here, the only allegations of Count Six even suggestive of defamation are found in paragraph 21 – a vague reference to (1) "false claims by DESA that [plaintiff] had violated company policy" and (2) "false comments" about plaintiff's performance.

Complaint, ¶ 21. As to the former, the Complaint does not set forth (a) the company policy that deSa allegedly claimed plaintiff had violated, (b) what deSa said about this, (c) to whom deSa spoke about this, (d) when deSa spoke about this, or (e) why deSa's words were false. As to the latter, the Complaint does not set forth (a) who allegedly made the comments about plaintiff's performance; (b) what that person allegedly said about plaintiff's performance, (c) what was false and defamatory about those comments, (d) to whom those comments were made, or (e) when those comments were made.

The Complaint's "fail[ure] to identify the specific subject matter of the alleged defamatory statements" requires dismissal of the defamation portion of Count Six, <u>Forgione</u>, <u>supra</u>, 2005 WL 1545278 at *5, as does its failure to name the person or persons to whom the allegedly defamatory statements were made. Indeed, the Complaint does not even allege that defamatory content was communicated to any third party, identified or not. <u>See</u> <u>Legowski v. O'Keefe</u>, 26 Conn. L. Rptr. 662, 2000 WL 295358 at *3 (Conn. Super. Mar. 2, 2000) (granting motion to strike slander claim; "The court finds that the plaintiffs' complaint is devoid of any allegation that the alleged remarks were published to a third person, a necessary predicate for a slander cause of action"); <u>Fishman v. Answer Connecticut, Inc.</u>, No. X08CV020192099, 2004 WL 2165956 at *3 (Conn. Super. July 8, 2004) (dismissing defamation claim for failure to state a claim where complaint did "not allege[] that the claimed defamatory statements were published by the defendants to any third person").

**POINT IV**

**COUNT SEVEN FAILS TO STATE A CLAIM FOR
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The Complaint must also be dismissed because Count Seven fails to state a legally viable claim for intentional infliction of emotional distress. To state such a claim under Connecticut law:

> Plaintiff must allege (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous, (3) that Defendants' conduct was the cause of the Plaintiffs distress, and (4) that the emotional distress sustained by the Plaintiff was severe.

Huff v. West Haven Board of Education, 10 F.Supp.2d 117, 122 (D. Conn. 1998); Miner v. Town of Cheshire, 126 F.Supp.2d 184, 194 (D. Conn. 2000); Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (Conn. 2000).

In order to state a cognizable cause of action, the "[p]laintiff must not only allege each of the four elements, but also *must allege facts sufficient to support them*." Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129, 136 (D. Conn. 2001) (italics added). "In the employment context, it is the employer's *conduct*, not the motive behind the conduct, that must be extreme or outrageous." Miner v. Town of Cheshire, 126 F.Supp.2d 184, 195 (D. Conn. 2000) (italics added).

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is

21

> one in which the recitation of the facts to an average
> member of the community would arouse his resentment
> against the actor, and lead him to exclaim, Outrageous!
> Conduct on the part of the defendant that is merely
> insulting or displays bad manners or results in hurt feelings
> is insufficient to form the basis for an action based upon
> intentional infliction of emotional distress.

Carrol v. Allstate Ins. Co., 262 Conn. 433, 443, 815 A.2d 119, 126 (Conn. 2003) (italics added) (citations and quotation marks omitted); Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062.  See also Miner, supra, 126 F.Supp.2d at 195 ("Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress").  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is *initially a question for the court to determine*."  Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062 (italics added); Etienne, supra, 186 F.Supp.2d at 136 (same); Padula v. Weston, No. CV064014462S, 2006 WL 3042660 at *8 (Conn. Super. Oct. 16, 2006) (same).

For his claim of intentional infliction of emotional distress, plaintiff alleges:

> 24.  VINYA and DESA had knowledge that these
> *false accusations* would damage [plaintiff's] career, would
> interfere with his employment prospects and that
> [plaintiff's] wife was expecting a child.  Further, VINYA's
> and DESA's *false accusations and misrepresentations*
> regarding [plaintiff's] employment performance, VINYA's
> and DESA's *wrongful termination* of [plaintiff's]
> employment, and VINYA's and DESA's *refusal to pay
> [plaintiff] his bonuses and grant the promised ownership*
> were all made to intentionally inflict emotional distress on
> [plaintiff], which they did.

Complaint, ¶ 24 (italics added). The only *conduct* alleged in this paragraph is the making of unspecified "false accusations and misrepresentations," the "wrongful termination" of plaintiff's employment, and the "refusal to pay" bonuses and the refusal to "grant the promised ownership." The Complaint does not allege, even conclusorily, that these acts were accompanied by conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Carrol, supra, 262 Conn. at 443, 815 A.2d at 126; Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062. See also Huff, supra, 10 F.Supp.2d at 122-23 ("[m]ere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress. Even "notice pleading" under the Federal Rules requires the allegation of minimal supporting facts") (citations and quotation marks omitted).

In Emanuele v. Baccaccio & Susanin, No. CV90 037 96 67 S,1994 WL 702923 (Conn. Super. Apr. 10, 1992), the plaintiff alleged claims for intentional infliction of emotional distress virtually identical to that alleged here. The "plaintiff claim[ed] that the defendant made *false accusations regarding the plaintiff's work performance* and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of *depriving her of benefits and compensation*." Emanuele, supra, 1994 WL 702923 at *3 (italics added). The court granted the defendant's motion to strike these claims, holding that these allegations "failed to allege the extreme and outrageous conduct required to maintain a claim for intentional infliction of emotional distress." Emanuele, supra, 1994 WL 702923 at *3. See also Padula, supra, 2006 WL 3042660 at *8-10 (allegations that the defendant "made the conditions

upon which the plaintiff was terminated absolutely intolerable with her false accusations, manner of interrogation and hostile environment" and that these were "calculated to cause the plaintiff mental distress" failed to state a claim for intentional infliction of emotional distress); <u>Muniz v. Kravis</u>, 59 Conn.App. 704, 710, 757 A.2d 1207, 1212 (Conn. App. 2000) ("[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior"); <u>Meade v. Yale University</u>, No. CV054016155, 2006 WL 2730320 at *8 (Conn. Super. Sept. 7, 2006) ("Connecticut courts have been unwilling to allow a plaintiff to premise a claim of intentional infliction of emotional distress solely upon the fact that the plaintiff was terminated from his or her employment").

Thus, it is clear that Count Seven fails to state a claim for intentional infliction of emotional distress, requiring its dismissal.

### POINT V

### COUNT EIGHT FAILS TO STATE A CLAIM FOR VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

The Complaint fails to state a legally viable claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, et <u>seq</u>. This statute provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any *trade or commerce*." Conn. Conn. Gen. Stat. § 42-110b(a) (italics added). Trade or commerce, in turn, is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or

mixed, and any other article, commodity, or thing of value in this state."  Conn. Gen. Stat. § 42-110a(4).

Thus, "[t]o state a claim under CUTPA, the plaintiff must allege that the actions of the defendant were performed in the conduct of 'trade or commerce.' "  Muniz, supra, 59 Conn.App. at 711, 757 A.2d at 1212.  It is well-settled that an employer-employee relationship does *not* constitute "trade or commerce" within the meaning of CUTPA.  See, e.g., Fenn v. Yale University, 283 F.Supp. 615, 639 (D. Conn. 2003) ("although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA"); Kinter v. Nidec-Torin Corp., 662 F.Supp. 112, 113 (D. Conn. 1987) (neither employers' actions during employment nor in inducing employment provide a basis for a CUTPA violation); Muniz, supra, 59 Conn. App. at 711, 757 A.2d at 1213 ("[t]he trial court properly held that an employment relationship does not constitute trade or commerce for purposes of CUTPA").

In addition, "[t]o state a cause of action for a CUTPA violation, the plaintiff must allege that the issue was *more than a private conflict between parties within the same business*."  Wadsworth v. Casle Corp., No. CV065002921, 2006 WL 2948848 at *2 (Conn. Super. Sep. 29, 2006) (italics added).

Here, the Complaint alleges that Defendants engaged in unfair or deceptive acts in the conduct of its business "by making false and misleading statements to its *employees* and investors" which "may have induced investors" to violate unspecified "SEC regulations", and that "[t]hese deceptive trade practices *may have affected* the earnings and value of VINYA which prevented VINYA and DESA from

*paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA*." See Complaint, ¶¶ 26, 27 (italics added).

Since an employer's actions vis-à-vis its employees provide no basis for liability under CUTPA, the allegation that Defendants made "false and misleading statements to [their] employees" clearly fails to state a claim. Fenn, supra, 283 F.Supp. at 639; Kinter, 662 F.Supp. at 113; Muniz, supra, 59 Conn. App. at 711, 757 A.2d at 1213.

Presumably, plaintiff will argue that the allegation that Defendants made "false and misleading statements to … investors" sets forth actionable conduct outside of his employment relationship with Defendants. The Complaint, however, does not allege that plaintiff himself was one of these investors, or that he sustained any loss *as an investor*. Rather, he claims that these statements to investors indirectly "prevented [Defendants] from paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA." See Complaint, ¶ 27. Thus, the only loss that plaintiff purportedly sustained was within the context of the employment relationship.

In Fortunato v. Office of Stephen M. Silson, 48 Conn. Super. 636, 856 A.2d 530 (Conn. Super. 2004), the plaintiff alleged that her employer, a dentist, violated CUTPA by firing her because her daughter had contemplated bringing a malpractice action against plaintiff's employer. The court found that while the "triggering event" of the daughter's malpractice action occurred outside of the employment relationship, the conduct which was the "central focus" of the action and the behavior "deemed worthy of suit" took place within the employment relationship, i.e., the employer's termination of

plaintiff.  <u>Fortunato</u>, <u>supra</u>, 48 Conn. Super. at 642, 856 A.2d at 534.  The court therefore dismissed the CUTPA claim.

As in <u>Fortunato</u>, <u>supra</u>, the conduct alleged to have taken place outside of the employment relationship in the instant case was, at most, the triggering event for conduct that took place inside that relationship and is the central focus of plaintiff's claim -- Defendants' alleged failure to pay him employment bonuses and grant him an ownership interest in the business.  Such "private conflict between parties within the same business" cannot be the basis for liability under CUTPA.  <u>Wadsworth</u>, <u>supra</u>, 2006 WL 2948848 at *2 ("alleg[ation] that the defendants' failure to transfer an ownership interest in [the defendant corporation] to him was 'unfair and has tended to deceive' the plaintiff" fails to state a claim under CUTPA).

Finally, plaintiff has not alleged the requisite "ascertainable loss" necessary to state a claim for a CUTPA violation.  The Complaint alleges that Defendants' false statements to employee and investors "*may have* affected the earnings and value of VINYA which prevented [Defendants] from paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA."  <u>See</u> Complaint, ¶ 27 (italics added).

Speculative loss resulting from conduct allegedly violative of CUTPA is insufficient to support a CUTPA claim.  In <u>Criscuolo v. Shaheen</u>, 46 Conn. Supp. 53, 736 A.2d 947 (Conn. Super. 1999), the court held that the plaintiff's allegation that she "may potentially suffer increased tax liabilities" as a result of the defendant's conduct was insufficient to state a CUTPA claim.  The court held that the plaintiff "relies on speculation rather than inference to establish her asserted loss, and it is the necessity of

speculation that is fatal to her cause." <u>Criscuolo</u>, <u>supra</u>, 46 Conn. Supp. at 62, 736 A.2d at 953; <u>see also</u> <u>Ruiz v. Matos</u>, No. CV990336246S, 2002 WL 31831024 (Conn. Super. Ct. Nov. 26, 2002) (plaintiff's allegation of a connection between defendant's use of a trade name at its newly-opened restaurant in breach of a contract not to use a similar trade name and the loss of revenue at plaintiff's restaurants was speculative and could not support a CUTPA violation).

It is clear that plaintiff has failed to plead a cause of action for violation of CUTPA. Count Eight must therefore be dismissed as a matter of law.

## **<u>CONCLUSION</u>**

Based on the foregoing, the Complaint must be dismissed on account of the parties' forum selection clause, and because it fails to satisfy the requirements for pleading fraud and fails to state a claim. The within motion should be granted in all respects.

Respectfully submitted,

SAPIRSTEIN & SAPIRSTEIN, P.C.

Dated: November 13, 2006

By: /s/ Tani E. Sapirstein
Tani E. Sapirstein
Federal Bar No.: 21160
Attorneys for defendants
1350 Main Street, 12th Floor
Springfield, MA 01103
Tel. (413) 827-7500
Fax (413) 827-7797

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following via first class mail, postage prepaid to:

Alfred J. Smith, Jr., Esq.
706 Bedford St.
Stamford, CT 06901


/s/ Tani E. Sapirstein
Tani E. Sapirstein

Dated:  November 13, 2006


K:\WP61\CASEFILE\Vinya Capital-deSa\memo of law re motion to dismiss.doc