UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

No.: 3-06 CV 1286 (AVC)

| | | |
|---|---|---|
| BLERON BARALIU, | | ) |
| | Plaintiff | ) |
| | | ) |
| v. | | ) |
| | | ) |
| VINYA CAPITAL, L.P., and | | ) |
| MICHAEL deSa, | | ) |
| | Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

SAPIRSTEIN & SAPIRSTEIN, P.C.
Attorneys for defendants
1350 Main Street, 12th Floor
Springfield, MA 01103
Tel. (413) 827-7500
Fax (413) 827-7797

Defendants Vinya Capital, L.P. ("Vinya") and Michael deSa ("deSa") (collectively, "Defendants"), by their attorneys Sapirstein & Sapirstein, P.C., respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint herein (the "Complaint").

### Counts One Through Five Are Subject to Dismissal Based On The Forum Selection Clause

Plaintiff concedes that the parties' original agreement "contains a mandatory forum selection clause designating the United States District Court for the Southern District of New York or the state courts of New York as the exclusive forum and jurisdiction for this action." See Opposing Memorandum, p. 1.  Plaintiff does not challenge the authorities cited in our moving memorandum, holding that a motion to dismiss based on a plaintiff's disregard of such a clause *must* be granted where, as here, the plaintiff fails to overcome the heavy burden of showing that enforcement of the clause would effectively deprive him of his "day in court".  Indeed, plaintiff in his Opposing Memorandum expressly states: "The plaintiff is not representing to this Court that the forum selection clause is unfair, or grave inconvenience, or unenforceable." See Opposing Memorandum, p. 5 (emphasis added).[1]

---

[1] The Opposing Memorandum, signed by an attorney without personal knowledge, purports to introduce several new allegations not made in the Complaint, including where the agreement and amendments thereto were negotiated and executed and where witnesses are located. See Opposing Memorandum, pp. 1-3.  It is well settled that allegations made outside of the complaint such as these may not be considered on a motion to dismiss.  In re Colonial Ltd. Partnership Litigation, 854 F.Supp. 64, 79 (D. Conn. 1994); Morgan Distributing Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss").  Even if these new allegations were properly before this Court, they would have no bearing on the enforcement of the forum selection clause, especially since plaintiff does not "argue that the forum selection clause is unfair, inconvenient or unenforceable."  See Opposing Memorandum, p. 5; Seward v. Devine, 888 F.2d 957, 962 (2d Cir. 1989) (affirming dismissal of breach of contract claims where there was "absolutely no indication that enforcement of the [forum selection] clauses would be unreasonable or unjust").

Rather, plaintiff contends that "there is no mandatory forum selection clause in effect between the parties" (see Opposing Memorandum, p. 4) because (a) the original "Agreement was amended and revised by a number of other agreements," two of which he claims were in writing and others allegedly verbal (see Opposing Memorandum, p. 1) (emphasis added), and (b) these amendments to the original agreement did not "ratify[] or even mention[] the previous forum selection clause" and "are silent on any mandatory forum." See Opposing Memorandum, pp. 2, 4. According to plaintiff, such silence resulted in a "conflict" that "eliminated" the forum selection clause from the parties' agreement. See Opposing Memorandum, pp. 4, 5.

Plaintiff cites no legal authority for this incredible position. This is not surprising since the law is clearly to the contrary.

> The applicable legal principle is so basic that it is nearly intuitive, and is stated infrequently…. Modifications [to an original contract] do not necessarily abrogate the original contract entirely; indeed, the terms of the old contract are still to be followed so far as not changed or as inconsistent with the new terms, and the governing contract may be said to be composed of the new terms and the unchanged terms of the old.

Marine Transport Lines v. Int'l Org. of Masters, Mates & Pilots, 696 F.Supp. 1, 16 (S.D.N.Y.1988), aff'd 878 F.2d 41 (2d Cir.1989) (emphasis added); Beacon Terminal Corp. v. Chemprene, Inc., 75 A.D.2d 350, 354, 429 N.Y.S.2d 715, 717-18 (2d Dep't) ("The modification of a contract results in the establishment of a new agreement between the parties which *pro tanto* supplants the affected provisions of the original agreement while leaving the balance of it intact") (emphasis added), appeal denied, 51 N.Y.2d 706, 413 N.E.2d 369, 433 N.Y.S.2d 1026 (1980); 22A N.Y. Jur.2d Contracts § 474 (2006)

("Although the effect of a modification is the production of a new contract, <u>it consists not only of the new terms agreed upon but of as many of the terms of the original contract as the parties have not abrogated by their modification</u>.  It is the responsibility of the court to interpret the terms of such agreement, reading the original agreement together with the modification") (emphasis added).  This principle applies not only to written amendments and modifications but to oral ones as well.  <u>See</u> <u>Marine Transport Lines</u>, <u>supra</u>, 696 F.Supp. at 15-17 (terms in written contract which were not the subject of subsequent oral modifications to that contract remained in effect and continued to govern the parties' contractual relationship).

Thus, a forum selection clause in an original agreement remains in effect despite subsequent amendments or modifications[2] to that agreement where the amendments or modifications do not address, or are silent as to, the issue of forum selection.  In <u>Sony Financial Services, LLC v. Multi Video Group, Ltd.</u>, 04 Civ.1321, 2005 WL 91310 (S.D.N.Y. Jan. 18, 2005), the plaintiff sued the defendant in New York despite a forum selection clause in the parties' contract requiring that disputes be litigated in California.  The defendant moved to dismiss based on this clause.  In opposition, the plaintiff argued that the contract had been subsequently modified.  The alleged modification, however, concerned terms other than that clause and was silent as to the forum for resolving disputes.  The court held that even if the contract

> had been modified in the manner urged by [the plaintiff], such modifications would not show that the [contract] -- including its forum selection clause -- was "superseded" in its entirety…. [S]ubsequent modifications do not

---

[2] The term "amend" and its variants, used by plaintiff, is synonymous with "modify".  <u>See</u> <u>Marine Transport Lines</u>,  <u>supra</u>, 696 F.Supp. at 15 n.12 (citing Webster's Third New International Dictionary 68 (1986) and Black's Law Dictionary 74 (5th ed. 1979)).

3

> necessarily supersede an original agreement in its entirety. Rather, in instances where an agreement is subsequently modified, the unmodified provisions of the original agreement continue to be enforceable.

Id. at *18 (internal citations omitted). The court therefore held that "the forum selection clause contained in the [contract] remains applicable to this dispute." Id. at *18. See also Connecticut Auto. Coverage, Inc. v. American International Group, Inc., 36 Conn. L. Rptr. 900, 2004 WL 1052770 (Super. Ct. Mar. 12, 2004) (dismissing action based on forum selection clause in original contract; subsequent amendment of contract terms did not amend paragraph containing forum selection clause).

As in Sony Financial Services and Connecticut Auto. Coverage, supra, there is no conflict between the mandatory forum selection clause expressly set forth in the original agreement in the instant case and the silence concerning this subject in the subsequent amendments alleged by plaintiff. Thus, all of plaintiff's breach of contract claims (Counts One through Four) are subject to this clause, requiring their dismissal.

Likewise, the fraud claim (Count Five) is subject to dismissal based on the forum selection clause. Plaintiff erroneously claims that the Second Circuit in Seward v. Devine, 888 F.2d 957 (2d Cir. 1989) "declined to dismiss the fraud, and other claims, on the basis of the forum selection clause." See Opposing Memorandum, p. 5. In fact, the Second Circuit never even reached the issue of whether that clause required dismissal of the fraud claim because the district court had already dismissed that state law claim based on the "absence of an independent basis for federal jurisdiction" over the claim. Id. at 959. Moreover, the district court dismissed the breach of contract claims based on the forum selection clause, which the Second Circuit affirmed as proper. Id. at 962.

Plaintiff suggests that a forum selection clause may be defeated by general allegations that a contract was induced by fraud, quoting New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24 (2d Cir. 1997) as so holding "where 'some invalidity such as fraud' is attached to it." See Opposing Memorandum, p. 5. The "it" to which the Second Circuit was referring, however, was not the contract as a whole but the forum selection clause in particular. New Moon, supra, 121 F.3d at 39.

> A forum selection clause … is not rendered invalid "any time a dispute arising out of a transaction is based upon an allegation of fraud [.]" Rather, a "forum-selection clause is not enforceable if the inclusion of *that clause* in the contract was the product of fraud or coercion." Here, [plaintiff] does not claim that the forum selection clause, specifically, was induced by fraud; therefore, the clause is not invalid as a matter of contract law.

Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H., 53 B.R. 1007, 1012 (S.D.N.Y. 1985) (citations omitted) (italics supplied by court); A.I. Credit Corp. v. Liebman, 791 F.Supp. 427, 430 (S.D.N.Y.1992) ("A party may not … avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that 'the inclusion of that clause in the contract was the product of fraud or coercion' ") (citations omitted) (emphasis added). Neither the Complaint nor the Opposing Memorandum alleges that the forum selection clause itself was the product of fraud.

**Count Five Does Not Satisfy the Requirements for Pleading Fraud**

The fraud claim must be dismissed not only based on the forum selection clause, as discussed above and in our moving memorandum, but also because it fails to satisfy the particularity requirements for pleading fraud under Rule 9(b). In response,

plaintiff argues that the Court should view the claim in the light most favorable to him. See Opposing Memorandum, p. 7.  This, however, still does not overcome the particularity deficiencies identified in pages 11-14 of our moving memorandum.  The Opposing Memorandum, on pages 7-8, merely repeats the same conclusory and generalized allegations regarding representations allegedly made by deSa, and makes no attempt to particularize them with dates, locations, and specific content.  As with the Complaint itself, the Opposing Memorandum fails to set forth any factual allegations capable of giving rise to a "strong inference" that deSa *knew* that the representations he supposedly made to plaintiff were false.

In recognition of these blaring deficiencies, plaintiff requests -- in the very last sentence of the Opposing Memorandum -- leave to amend the Complaint if the Court finds that plaintiff's claims "have not be [sic] pleaded with the required particularity." See Opposing Memorandum, p. 10.  Plaintiff, however, has not explained how any amended pleading would differ from the existing complaint, let alone set forth any of the details and particulars that he would propose to include in an amended complaint.  See Kowal v. MCI Communications, Corp., 16 F.3d 1271, 1280 (D.C. Cir. 1994) (affirming dismissal of complaint pursuant to Fed.R.Civ. P. 9(b) and 12(b)(6) without leave to amend; "[w]hile Federal Rule 15(a) provides that 'leave [to amend] shall be freely given when justice so requires,' a 'bare request in an opposition to a motion to dismiss -- without any indication of the particular grounds on which amendment is sought ...-- does not constitute a motion within the contemplation of Rule 15(a)'") (emphasis added); Calderon v. Kansas Dept. of Social and Rehabilitation Services, 181 F.3d 1180, 1187 (10th Cir. 1999) (affirming dismissal of complaint without leave to amend; "single

6

sentence, <u>lacking a statement for the grounds for amendment</u> and dangling at the end of [plaintiff's] memorandum [in opposition to motion to dismiss], did not rise to the level of a motion for leave to amend") (emphasis added).

### Count Six Does Not State A Claim For Wrongful Termination

As to Count Six, plaintiff does not challenge any of the caselaw cited in our moving memorandum on page 15, holding that an at-will employee may be terminated at any time and for any reason or no reason so long as the termination does not violate an important public policy. The Opposing Memorandum, at page 8, contends that the amendments to the original agreement changed plaintiff's employment and "gave [him] protections beyond mere "at will" employment status." The Opposing Memorandum, however, does not allege that these amendments guaranteed plaintiff employment for any definite or fixed period of time, let alone claim that the Complaint itself contains such an allegation. Nor does it assert any basis recognized by law for claiming wrongful termination of employment. In an attempt to resurrect his wrongful termination claim, the Opposing Memorandum, at page 8, attempts for the first time to conflate it with the conclusory and non-particularized allegations that constitute plaintiff's entire claim of fraud. This attempt must fail for the same lack of pleading specificity that mandates dismissal of Count Five.

### Count Six Does Not State A Claim For Defamation

Plaintiff does not dispute any of the authorities cited in our moving memorandum, demonstrating that Count Six does not state a claim for defamation. In a single sentence on page 8 of the Opposing Memorandum, he requests leave to amend if the Court "finds the Complaint fails to satisfy the requirements of defamation." Although

the moving memorandum clearly set forth the requisite elements of defamation and the numerous deficiencies in plaintiff's claim, the Opposing Memorandum offers no indication that plaintiff could state a legally cognizable claim for defamation if given leave to replead, and fails to set forth any grounds for amendment.  Leave to replead should therefore be denied.  Kowal, supra, 16 F.3d at 1280; Calderon, supra, 181 F.3d at 1187.

## Count Seven Does Not State A Claim For Intentional Infliction Of Emotional Distress

The Opposing Memorandum also fails to demonstrate that the Complaint states a claim for intentional infliction of emotional distress in Count Seven. "Connecticut courts have been unwilling to allow a plaintiff to premise a claim of intentional infliction of emotional distress solely upon the fact that the plaintiff was terminated from his or her employment." Meade v. Yale University, No. CV054016155, 2006 WL 2730320 at *8 (Conn. Super. Sept. 7, 2006).  Plaintiff argues that his termination, at a time when his wife was pregnant and they were about to purchase a home, amounts to intentional infliction of emotional distress.  This Court has already held otherwise.  In Latella v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 3:99CV1341, 1999 WL 1575685 (D.Conn. Nov. 24, 1999), the plaintiff, a pregnant woman, was terminated by her employer and told to leave the premises immediately, just a few hours after she objected to her superior's ridiculing remarks about her appearance and hygiene and one day after she returned from a medical leave of absence.  This Court dismissed the plaintiff's claim on the pleadings as a matter of law.

> "Conduct that is merely insulting, that reflects bad taste or judgment, or that results in hurt feelings is not enough to

8

maintain a cause of action for intentional infliction of emotional distress." [citation omitted]. <u>Feld's insulting comments to plaintiff, even given her pregnant status, do not rise to the level of extreme and outrageous conduct.</u>

Terminating an employee upon her return from medical leave or in retaliation for filing a discrimination complaint, despite being inappropriate or unlawful, is not extreme and outrageous. [citing cases].

<u>Id.</u> at *2 (emphasis added).  Similarly, in <u>Valenti v. Carten Controls Inc.</u>, 3:94CV1769, 1997 WL 766854 (D.Conn. Dec. 4, 1997), the plaintiff, a pregnant woman claiming intentional infliction of emotional distress, alleged that her employer, before demoting her, had "criticiz[ed] her work unjustly, sp[oke] to her on numerous occasions in a loud, angry, accusatory voice and pound[ed] his fists, [showed a] demeaning attitude towards her, and [frequently alluded] to her option to quit if she was unhappy." <u>Id.</u> at *9.  This Court dismissed the claim, holding that "[t]his alleged conduct, <u>even when viewed in the context of Valenti's pregnancy and precarious financial situation</u>, does not meet the required threshold of outrageousness." <u>Id.</u> at *9 (emphasis added).  Unlike the plaintiffs in <u>Latella</u> and <u>Valenti</u>, <u>supra</u>, in the instant case it was not plaintiff but his wife who was pregnant at the time plaintiff left defendants' employ.  It follows that there is even less basis for sustaining the intentional infliction of emotional distress claim here than there was in <u>Latella</u> and <u>Valenti</u>, where both claims were dismissed as a matter of law.

### Count Eight Does Not State A Claim Under CUTPA

In an attempt to sustain his CUTPA claim, plaintiff claims that the ownership interest allegedly promised to him made him "more than an employee" and "made [him] an owner and investor." <u>See</u> Opposing Memorandum, p. 9.  This is immaterial since "private conflict between parties <u>within the same business</u>" cannot be

9

the basis for liability under CUTPA.  <u>Wadsworth v. Casle Corp.</u>, No. CV065002921, 2006 WL 2948848 at *2 (Conn. Super. Sep. 29, 2006) ("alleg[ation] that the defendants' failure to transfer an <u>ownership interest</u> in [the defendant corporation] to him was 'unfair and has tended to deceive' the plaintiff" fails to state a claim under CUTPA) (emphasis added).  Plaintiff cites no legal authority to the contrary.

Virtually conceding that the forum selection clause will be enforced, plaintiff requests that this Court transfer the action to the Southern District of New York rather than dismiss it.  <u>See</u> Opposing Memorandum, p. 10.  Plaintiff cites no authority for this request and does not challenge any of the legal authority in our moving memorandum at pages 8-10, holding that transfer would be improper and that dismissal is warranted.

### CONCLUSION

Based on the foregoing, the Complaint must be dismissed on account of the parties' forum selection clause, and because it fails to satisfy the requirements for pleading fraud and fails to state a claim.  The within motion should be granted in all respects.

Respectfully submitted,

SAPIRSTEIN & SAPIRSTEIN, P.C.

Dated:  December 12, 2006

By: /s/ Tani E. Sapirstein
Tani E. Sapirstein
Federal Bar No.: 21160
Attorneys for defendants
1350 Main Street, 12th Floor
Springfield, MA 01103
Tel. (413) 827-7500
Fax (413) 827-7797

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following via first class mail, postage prepaid to:

Alfred J. Smith, Jr., Esq.
706 Bedford St.
Stamford, CT 06901


　/s/ Tani E. Sapirstein
Tani E. Sapirstein

Dated:  December 12, 2006