UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

BLERON BARALIU,                                   No. 07-cv-04626 (VM)

                Plaintiff,

       -against-

VINYA CAPITAL, L.P. and MICHAEL deSa,

               Defendants.

-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**


                                    VANDENBERG & FELIU, LLP
                                      Attorneys for defendants
                                      110 East 42nd Street, Suite 1502
                                      New York, NY 10017
                                      (212) 763-6800

*Of Counsel*:
Alfred G. Feliu
Morlan Ty Rogers

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 1

ARGUMENT ............................................................................................................ 2

      POINT I

      COUNT FIVE MUST BE DISMISSED FOR
      FAILURE TO PLEAD FRAUD WITH PARTICULARITY ............................................ 2

      POINT II

      COUNT SIX FAILS TO STATE A CLAIM FOR
      EITHER WRONGFUL TERMINATION OR DEFAMATION ....................................... 6

            A.    Wrongful Termination .................................................................... 7

            B.    Defamation .................................................................................. 10

      POINT III

      COUNT SEVEN FAILS TO STATE A CLAIM FOR
      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ...................................... 13

      POINT IV

      COUNT EIGHT FAILS TO STATE A CLAIM FOR VIOLATION
      OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT .................................. 16

CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

Appleton v. Board of Educ. of Town of Stonington,
254 Conn. 205, 757 A.2d 1059 (Conn. 2000) ................................................................13, 14, 15

Baron v. Port Authority of N.Y. and N.J., 271 F.3d 81
(2d Cir. 2001) ............................................................................................................................7

Berte v. Haddam Hills Academy, Inc., 40 Conn. L. Rptr. 565,
2005 WL 3624553 (Conn. Super. Dec. 16, 2005) ................................................................... 11

Bodgan v. Schultz, No. CV065000413, 2006 WL 2578789
(Conn. Super. Aug. 17, 2006) ................................................................................................. 11

Carbone v. Atlantic Richfield Co., 204 Conn. 460,
528 A.2d 1137 (Conn. 1987) .................................................................................................... 9

Carrol v. Allstate Ins. Co., 262 Conn. 433, 815 A.2d 119
(Conn. 2003) ..................................................................................................................... 14, 15

Cellamare v. Millbank, Tweed, Hadley & McCloy LLP,
No. 03-CV-0039, 2003 WL 22937683 (E.D.N.Y. Dec. 2, 2003) ............................................. 7

Craig v. Colonial Penn Ins. Co., 335 F.Supp.2d 296 (D. Conn. 2004) .......................................11

Criscuolo v. Shaheen, 46 Conn. Supp. 53, 736 A.2d 947
(Conn. Super. 1999) ................................................................................................................19

Cweklinsky v. Mobil Chemical Co., 267 Conn. 210,
837 A.2d 759 (2004) ................................................................................................................11

Dooley v. Metropolitan Jewish Health System, No. 02-CV-4640,
2003 WL 22171876 (E.D.N.Y. July 30, 2003) ......................................................................... 8

Emanuele v. Baccaccio & Susanin, No. CV90 037 96 67 S,
1994 WL 702923 (Conn. Super. Apr. 10, 1992) ..................................................................... 15

Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129
(D. Conn. 2001) ................................................................................................................ 13, 14

Fenn v. Yale University, 283 F.Supp. 615 (D. Conn. 2003) ................................................. 17, 18

Fiorella v. Galena Associates, LLC, 21 Conn. L. Rptr. 58,
1997 WL 746378 (Conn. Super. Nov. 21, 1997) .......................................................... 9

First Capital Asset Management, Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004) .................................................................................3

Fishman v. Answer Connecticut, Inc., No. X08CV020192099,
2004 WL 2165956 (Conn. Super. July 8, 2004) ..........................................................12

Forgione v. Bette, No. CV 04 4001099, 2005 WL 1545278
(Conn. Super. June 2, 2005) ............................................................................11, 12

Fortunato v. Office of Stephen M. Silson, 48 Conn. Super. 636
856 A.2d 530 (Conn. Super. 2004) .......................................................................18, 19

Gambardella v. Apple Health Care, Inc., 86 Conn.App. 842,
863 A.2d 735 (Conn. App. 2005) .........................................................................8, 9

Goudis v. American Currency Trading Corp., 233 F.Supp.2d 330
(D. Conn. 2002) ............................................................................................ 5, 6

Horn v. New York Times, 100 N.Y.2d 85, 760 N.Y.S.2d 378 (2003) ......................................... 8

Huff v. West Haven Board of Education, 10 F.Supp.2d 117
(D. Conn. 1998) ........................................................................................... 13, 15

In re DRDGOLD Ltd. Securities Litigation, 472 F.Supp.2d 562
(S.D.N.Y. 2007) ............................................................................................. 3

Isanaka v. Spectrum Technologies USA Inc., 131 F.Supp.2d 353
(N.D.N.Y. 2001) ............................................................................................. 5

Kinter v. Nidec-Torin Corp., 662 F.Supp. 112 (D. Conn. 1987) ...........................................17, 18

Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115
(D. Conn. 1998) ........................................................................................... 11

Legowski v. O'Keefe, 26 Conn. L. Rptr. 662, 2000 WL 295358
(Conn. Super. Mar. 2, 2000) ..............................................................................12

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) ..................................................... 3, 5

Lobosco v. New York Telephone Company/NYNEX, 96 N.Y.2d 312,
727 N.Y.S.2d 383 (2001) .................................................................................. 7

Meade v. Yale University, No. CV054016155, 2006 WL 2730320
(Conn. Super. Sept. 7, 2006) ................................................................... 16

Miner v. Town of Cheshire, 126 F.Supp.2d 184 (D. Conn. 2000) ........................................13, 14

Morris v. Hartford Courant Co., 200 Conn. 676, 513 A.2d 66
(Conn. 1986) ................................................................................. 8

Muniz v. Kravis, 59 Conn.App. 704, 710, 757 A.2d 1207
(Conn. App. 2000) ........................................................................ 16, 17, 18

Padula v. Weston, No. CV064014462S, 2006 WL 3042660
(Conn. Super. Oct. 16, 2006) ................................................................ 14, 15

Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610,
1993 WL 338633 (Conn. Super. Aug. 26, 1993) .................................................... 9, 10

Reyes v. Ames Dept. Stores, Inc., 10 Conn. L. Rptr. 625,
1994 WL 30014 (Conn. Super. Jan. 18, 1994) ...................................................... 9

Ruiz v. Matos, No. CV990336246S, 2002 WL 31831024
(Conn. Super. Ct. Nov. 26, 2002) ............................................................... 19

Sachtjen v. Saverin, No. CV 990364004S, 2000 WL 38004
(Conn. Super. Jan. 5, 2000) .................................................................. 10

Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,
427 A.2d 385 (Conn. 1980) ................................................................... 8

Shields v. Citytrust Bancorp., 25 F.3d 1124 (2d Cir. 1994) ................................................. 3, 4, 5

Stirling Homex Corp. v. Homasote Co., 437 F.2d 87
(2d Cir. 1971) .............................................................................. 3

Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415
(S.D.N.Y. 1978) ............................................................................ 3

United Feature Syndicate, Inc. v. Miller Features,
216 F.Supp.2d 198 (S.D.N.Y. 2002) ........................................................... 3

U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58
(D. Conn. 2006) ............................................................................ 5

U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.,
389 F.3d 1251 (D.C. Cir. 2004) .............................................................. 6

<u>Wadsworth v. Casle Corp.</u>, No. CV065002921, 2006 WL 2948848
(Conn. Super. Sep. 29, 2006) ................................................................................................ 17, 19

**Other Authorities**

Fed. R. Civ. P. 9(b). ................................................................................. *passim*

Conn. Gen. Stat. § 42-110a ....................................................................................16

Conn. Gen. Stat. § 42-110b(a) ................................................................................16

Conn. Gen. Stat. § 42-110a(4) ................................................................................16

**Preliminary Statement**

Defendants Vinya Capital, L.P. ("Vinya") and Michael deSa ("deSa") (collectively, "Defendants"), by their attorneys Vandenberg & Feliu, LLP, respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, dismissing Counts Five, Six, Seven and Eight of plaintiff's complaint herein for failure to state a claim and failure to plead fraud with particularity.

**Background**

Plaintiff originally commenced this action on August 17, 2006 in the United States District Court for the District of Connecticut, where it was assigned to the Honorable Alfred V. Covello, United States District Judge under case no. 3:06-cv-01286-AVC. Plaintiff's complaint (the "Complaint") asserts eight causes of action – breach of contract (Counts One through Four), fraud and misrepresentation (Count Five), wrongful termination and defamation (Count Six), intentional infliction of emotional distress (Count Seven), and violation of the Connecticut Unfair Trade Practices Act (Count Eight). A copy of the Complaint is annexed as Exhibit "A" to the accompanying affidavit of Morlan Ty Rogers ("Rogers Aff.").

Several of the claims in the Complaint – i.e., the breach of contract and fraud claims – arise under, or in connection with, a written employment agreement that contains a mandatory forum selection clause designating the instant Court or the state courts of New York as the exclusive forum and jurisdiction for this action. Because of this, defendants moved to dismiss Counts One through Five based on improper venue.

Said motion *also* sought dismissal of Counts Five through Eight based on failure to state a claim and failure to plead fraud with particularity.

In a Ruling dated May 7, 2007 (Rogers Aff., Exhibit "B"), Judge Covello granted defendants' motion to the extent of transferring the entire action to the instant Court on the basis of the forum selection clause. Said Ruling did *not* address or rule upon the branches of defendants' motion seeking dismissal of Counts Five, Six, Seven and Eight of the Complaint pursuant to Rules 12(b)(6) and 9(b) for failure to state a claim and failure to plead fraud with particularity.

By the instant motion, defendants respectfully request that this Court dismiss said claims on these grounds.

As set forth below, the fraud claim (Count Five) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to plead that claim with particularity. In addition, plaintiff's claims for wrongful termination and defamation (Count Six), intentional infliction of emotional distress (Count Seven), and violation of the Connecticut Unfair Trade Practices Act (Count Eight) fail to state a claim, requiring dismissal of those claims pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## POINT I

## COUNT FIVE MUST BE DISMISSED FOR
## <u>FAILURE TO PLEAD FRAUD WITH PARTICULARITY</u>

Count Five of the Complaint must be dismissed because it fails to satisfy the particularity requirements for pleading fraud.

Rule 9(b) of the Federal Rules of Civil Procedure[1] requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This is meant to protect defendants from harm resulting from meritless charges of serious wrongdoing and inhibit the filing of complaints as a pretext for discovering unknown wrongs. Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415, 419 (S.D.N.Y. 1978). It also assures that defendants are given notice of the exact nature of the fraud claimed, sufficient to permit them to respond. Rule 9(b) "is a more stringent rule than merely to require specificity sufficient to 'inform a defendant (as to) what the plaintiff is talking about.'" Todd, supra, 78 F.R.D. at 419.

To satisfy this rule, a plaintiff must therefore "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006); Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994); In re DRDGOLD Ltd. Securities Litigation, 472 F.Supp.2d 562, 567 (S.D.N.Y. 2007). Besides alleging the particular details of a fraud, "the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent." First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) (italics in original); Shields, supra, 25 F.3d at 1128.

The following three paragraphs – the sum total of plaintiff's fraud claim – fail to satisfy these particularity requirements:

---

[1] The level of specificity required for pleadings in a diversity case in federal court is governed by federal procedural rules. Stirling Homex Corp. v. Homasote Co., 437 F.2d 87, 88 n.2 (2d Cir. 1971); United Feature Syndicate, Inc. v. Miller Features, 216 F.Supp.2d 198, 220 n.8 (S.D.N.Y. 2002).

18.   During the term of his employment VINYA, through it Principal and Owner, DESA, made knowingly false statements to BARALIU regarding the financial strength of VINYA, the amount of investment DESA had made and was continuing to make in VINYA, the amount of investments other financial institutions were making in VINYA, including that Vega Asset Management had committed to seed VINYA with an investment of $250 million, that MBIA was going to invest $50 million in Vinya Capital, L.P. and that "country EQ " was going to invest over $500 million in VINYA during 2005 and 2006.

19.   These statements were made by DESA on behalf of VINYA to induce BARALIU to forego payment of promised bonuses and ownership grants.   In fact, BARALIU did rely on these false statements, to his detriment, and was induced through this fraud and misrepresentation to forego payment of promised bonuses and ownership grants.

20.   Therefore, BARALIU seeks damages of $2,000,000 from VINYA and DESA plus punitive damages and interest, costs and attorneys fees under this COUNT for fraud and misrepresentation.

These conclusory and generalized allegations fail to state with particularity the content of the representations allegedly made by deSa.  They do not set forth or describe what he allegedly said concerning the financial strength of Vinya. Complaint, ¶ 18.  They do not set forth what he allegedly told plaintiff concerning the amount that he had invested in, and was continuing to invest in, Vinya.  Complaint, ¶ 18. Nor do they set forth what was false about *any* of the representations allegedly made by him.  Complaint, ¶ 18.  See Shields, supra, 25 F.3d at 1128 (to satisfy Rule 9(b), the complaint must, inter alia, "explain why the statements were fraudulent").  Further, the complaint does not identify the amount of the bonuses and nature of the ownership grants that plaintiff allegedly gave up in reliance upon these representations.

In addition, the Complaint does not plead scienter sufficiently to satisfy Rule 9(b).

> Although scienter, or fraudulent intent, may be pled generally, a plaintiff still must allege facts that give rise to a "strong inference" of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994). A strong inference can be established either "(a) by alleging facts to show that defendants had both the motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58, 83 (D. Conn. 2006); Lerner, supra, 459 F.3d at 290-91.

Here, the Complaint does nothing more than allege conclusorily that the representations allegedly made by deSa were "false statements" and that he made them "knowingly". Complaint, ¶ 18. It does not allege any facts that would give rise to a "strong inference" that Defendants knew that these alleged representations were false and that Defendants had an intent to defraud.

The Complaint also makes no attempt to identify the location where the alleged statements were made, let alone identify it with specificity. Isanaka v. Spectrum Technologies USA Inc., 131 F.Supp.2d 353, 360 (N.D.N.Y. 2001). See also Goudis v. American Currency Trading Corp., 233 F.Supp.2d 330, 334 (D. Conn. 2002) (allegation that defendants made misrepresentations "within the State of Connecticut" without setting forth the specific location fails to satisfy pleading requirements for fraud claim; "Vague assertions that alleged fraudulent acts occurred within a particular state are not 'particular' under any reasonable definition of that term").

Moreover, the fraud claim fails to allege the time or times of the alleged misrepresentations with particularity.  The *only* reference in Count Five concerning the timing of the alleged statements is the vague phrase "[d]uring the term of [plaintiff's] employment."  Complaint, ¶ 18.  An open ended time frame such as this does not satisfy Rule 9(b).  See U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd., 389 F.3d 1251, 1257 (D.C. Cir. 2004) (dismissing fraud claim because "the open-ended time span alleged in the complaint failed to give [defendants]" adequate notice).  This is especially the case since plaintiff does not specify the date or dates during this period on which he gave up his bonuses and ownership grants allegedly in reliance upon those representations.  See also Goudis, supra, 233 F.Supp.2d at 333 (dismissing fraud claim alleging that misrepresentations were made "'on or about June 2000 and on various other occasions….'  Neither complaint contains the dates of specific meetings, nor identifies what was said on each occasion").

Based on the foregoing, it is clear that the fraud claim must be dismissed for lack of particularity pursuant to Rule 9(b).

### POINT II

### COUNT SIX FAILS TO STATE A CLAIM FOR EITHER WRONGFUL TERMINATION OR DEFAMATION

Count Six asserts a tort claim for wrongful termination and defamation.  It claims that plaintiff's "employment was wrongfully terminated based on false claims by DESA that [plaintiff] had violated company policy and false comments about his performance."  Complaint, ¶ 21.  As shown below, the Complaint fails to state a claim for either wrongful termination or defamation.

A.    **Wrongful Termination**

The wrongful termination claim is not legally viable because plaintiff was unquestionably an "at will" employee; the Employment Agreement set forth no fixed term for plaintiff's employment and expressly designated his employment as "at will". See Employment Agreement, ¶ 3.  Moreover, Vinya was "free to ask [plaintiff] to leave and terminate [his] employment, at any time, with or without cause."  See Employment Agreement, ¶ 3.  The Employment Agreement expressly provides that New York law shall govern the construction, interpretation and enforcement thereof.  See Employment Agreement, ¶ 13(a).

Under New York law, an individual employed, as here, pursuant to a contract for an indefinite term is presumed to be an "at will" employee who can be terminated for any reason or no reason.  Lobosco v. New York Telephone Company/NYNEX, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 385 (N.Y. 2001) ("[w]here the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason").

There are *no* exceptions to this rule.  "New York does not recognize the tort of wrongful discharge [and] there is no exception for firings that violate public policy such as, for example, discharge for exposing an employer's illegal activities."  Lobosco, supra, 96 N.Y.2d at 316, 727 N.Y.S.2d at 385, quoted in Cellamare v. Millbank, Tweed, Hadley & McCloy LLP, No. 03-CV-0039, 2003 WL 22937683 at *9 (E.D.N.Y. Dec. 2, 2003) (granting motion to dismiss); Baron v. Port Authority of N.Y. and N.J., 271 F.3d 81 (2d Cir. 2001) (noting "the clarity with which the New York Court of Appeals spoke

in Lobosco"). See also Horn v. New York Times, 100 N.Y.2d 85, 96, 760 N.Y.S.2d 378, 384 (N.Y. 2003) ("We have consistently declined to create a common-law tort of wrongful or abusive discharge, or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts"); Dooley v. Metropolitan Jewish Health System, No. 02-CV-4640, 2003 WL 22171876 at *4 (E.D.N.Y. July 30, 2003) ("the New York Court of Appeals has repeatedly turned back attempts to curtail the scope of the employment-at-will rule by, for example, providing for a cause of action for wrongful discharge or for terminations that contradict public policy"). As an "at will" employee, plaintiff clearly has no claim for wrongful termination.

Even if Connecticut law governed, the Complaint would still fail to state a claim for wrongful termination. Under Connecticut law, an "at will" employee can be terminated for any reason or no reason so long as the termination does not violate an important public policy. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-77, 427 A.2d 385 (Conn. 1980) (recognizing that the termination of an at-will employee in violation of an important public policy is actionable as a wrongful termination); Morris v. Hartford Courant Co., 200 Conn. 676, 678, 513 A.2d 66, 67 (Conn. 1986) (there is a "narrow public policy exception to the general proposition that contracts for an indefinite term of employment are terminable at will").

To maintain a claim for wrongful discharge from at-will employment, "the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." Morris, supra, 200 Conn. at 679, 513 A.2d at 68; Gambardella v. Apple Health Care, Inc., 86 Conn.App. 842, 853, 863 A.2d 735, 743 (Conn. App.

2005) ("A cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy"). See also Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (Conn. 1987) (termination of an employee in an unreasonable and abusive manner does not violate public policy); Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *2 (Conn. Super. Aug. 26, 1993) ("not every act in derogation of a general statute, nor all conduct contrary to the common law, rises to the level of a violation of an *important* public policy") (italics in original).

A wrongful termination claim under Connecticut law cannot be based on allegations that an employer made false accusations of theft and dishonesty in connection with discharging an employee. This is so even where the plaintiff alleges that the false accusations were made intentionally and with knowledge of their falsity. Gambardella, supra, 86 Conn. App. at 852, 854, 863 A.2d at 742, 743 (affirming dismissal of wrongful termination claim; allegation that the defendants terminated the plaintiff employment for theft, but "knew at the time that the plaintiff had not committed theft" did not allege a violation of any important public policy); Reyes v. Ames Dept. Stores, Inc., 10 Conn. L. Rptr. 625, 1994 WL 30014 at *1-2 (Conn. Super. Jan. 18, 1994) (granting motion to strike wrongful discharge claim; allegations that employer maliciously and intentionally made false accusation of theft in order to discharge employee "do not rise to the level of a violation of an important public policy"); Rafael, supra, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3 (same); Fiorella v. Galena Associates, LLC, 21 Conn. L. Rptr. 58, 1997 WL 746378 at *1, 4 (Conn. Super. Nov. 21, 1997) (allegation that defendant "falsely accused the plaintiff of stealing company funds, knowing these accusations to be false … failed to

allege a violation of public policy sufficient to state a cause of action for wrongful termination").

In the above cases, intentionally false accusations of criminality were insufficient to state a claim for wrongful discharge. Here, the Complaint does not even allege that Defendants accused plaintiff of criminality. It merely alleges that (a) Defendants accused plaintiff of violating some unspecified "company policy" and made comments about his performance, and (b) that these accusations and comments were false. These allegations do not implicate any conceivable "public policy" important enough to overcome "the well established rule that an employee at will is terminable at will." Rafael, supra, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3.

Furthermore, the Complaint does not allege that Defendants knew of the falsity of the accusations and comments allegedly made by them. Even if the Complaint alleged this, it would still be insufficient as a matter of law. See Sachtjen v. Saverin, No. CV 990364004S, 2000 WL 38004 at *3 (Conn. Super. Jan. 5, 2000) ("[e]ven construing the facts most favorable to the plaintiff and assuming that the defendants did knowingly make false accusations [that plaintiff was involved in a business plan to compete against defendant], such actions are not sufficient to violate an important public policy").

Clearly, plaintiff's "wrongful termination" claim cannot withstand the instant motion to dismiss.

**B.** **Defamation**

Plaintiff's defamation claim must be dismissed because several of the elements required for such a claim are pleaded insufficiently or not at all.

> To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217, 837 A.2d 759, 763-64 (2004);

Craig v. Colonial Penn Ins. Co., 335 F.Supp.2d 296, 312 (D. Conn. 2004).

Because Rule 8 requires that a complaint afford the defendant sufficient notice of the communications complained of to enable him to defend himself, "[a] complaint is insufficient to withstand dismissal for failure to state a cause of action where, other than the bare allegation that the defendant's actions caused injury to plaintiff's reputation, the complaint sets forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made." Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115, 121 (D. Conn. 1998) (emphasis added); Forgione v. Bette, No. CV 04 4001099, 2005 WL 1545278 at *5 (Conn. Super. June 2, 2005) ("defamation must be pleaded with specificity, identifying 'what allegedly defamatory statements were made, by whom and to whom'").

> In order to respond to a claim of defamation, a defendant has to know something about the nature of the statements allegedly made. Notice of course, is an issue; perhaps equally persuasive is the need to frame pleadings appropriately. There are a number of special defenses, for example, that may or may not be appropriate, depending on the nature of the statements alleged to have been made.

Berte v. Haddam Hills Academy, Inc., 40 Conn. L. Rptr. 565, 2005 WL 3624553 at *9 (Conn. Super. Dec. 16, 2005). See also Bodgan v. Schultz, No. CV065000413, 2006 WL

2578789 at *2 (Conn. Super. Aug. 17, 2006) (granting motion to strike; complaint did "not set forth specific facts to establish what defamatory statements were actually made and to whom these statements were published").

Here, the only allegations of Count Six even suggestive of defamation are found in paragraph 21 – a vague reference to (1) "false claims by DESA that [plaintiff] had violated company policy" and (2) "false comments" about plaintiff's performance. Complaint, ¶ 21.  As to the former, the Complaint does not set forth (a) the company policy that deSa allegedly claimed plaintiff had violated, (b) what deSa said about this, (c) to whom deSa spoke about this, (d) when deSa spoke about this, or (e) why deSa's words were false.  As to the latter, the Complaint does not set forth (a) who allegedly made the comments about plaintiff's performance; (b) what that person allegedly said about plaintiff's performance, (c) what was false and defamatory about those comments, (d) to whom those comments were made, or (e) when those comments were made.

The Complaint's "fail[ure] to identify the specific subject matter of the alleged defamatory statements" requires dismissal of the defamation portion of Count Six, <u>Forgione</u>, <u>supra</u>, 2005 WL 1545278 at *5, as does its failure to name the person or persons to whom the allegedly defamatory statements were made.  Indeed, the Complaint does not even allege that defamatory content was communicated to any third party, identified or not.  <u>See</u> <u>Legowski v. O'Keefe</u>, 26 Conn. L. Rptr. 662, 2000 WL 295358 at *3 (Conn. Super. Mar. 2, 2000) (granting motion to strike slander claim; "The court finds that the plaintiffs' complaint is devoid of any allegation that the alleged remarks were published to a third person, a necessary predicate for a slander cause of action"); <u>Fishman v. Answer Connecticut, Inc.</u>, No. X08CV020192099, 2004 WL 2165956 at *3 (Conn.

Super. July 8, 2004) (dismissing defamation claim for failure to state a claim where complaint did "not allege[] that the claimed defamatory statements were published by the defendants to any third person").

## POINT III

### COUNT SEVEN FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count Seven must be dismissed because it fails to state a legally viable claim for intentional infliction of emotional distress.   To state such a claim under Connecticut law:

> Plaintiff must allege (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous, (3) that Defendants' conduct was the cause of the Plaintiffs distress, and (4) that the emotional distress sustained by the Plaintiff was severe.

Huff v. West Haven Board of Education, 10 F.Supp.2d 117, 122 (D. Conn. 1998); Miner v. Town of Cheshire, 126 F.Supp.2d 184, 194 (D. Conn. 2000); Appleton v. Board of Educ. of Town of Stonington, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (Conn. 2000).

In order to state a cognizable cause of action, the "[p]laintiff must not only allege each of the four elements, but also *must allege facts sufficient to support them*." Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129, 136 (D. Conn. 2001) (italics added).   "In the employment context, it is the employer's *conduct*, not the motive behind the conduct, that must be extreme or outrageous." Miner, supra, 126 F.Supp.2d at 195 (italics added).

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. *Liability has been found only where the conduct has been so outrageous in character, and so*

13

> *extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

Carrol v. Allstate Ins. Co., 262 Conn. 433, 443, 815 A.2d 119, 126 (Conn. 2003) (italics added) (citations and quotation marks omitted); Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062. See also Miner, supra, 126 F.Supp.2d at 195 ("Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress"). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is *initially a question for the court to determine.*" Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062 (italics added); Etienne, supra, 186 F.Supp.2d at 136 (same); Padula v. Weston, No. CV064014462S, 2006 WL 3042660 at *8 (Conn. Super. Oct. 16, 2006) (same).

For his claim of intentional infliction of emotional distress, plaintiff alleges:

> 24. VINYA and DESA had knowledge that these *false accusations* would damage [plaintiff's] career, would interfere with his employment prospects and that [plaintiff's] wife was expecting a child. Further, VINYA's and DESA's *false accusations and misrepresentations* regarding [plaintiff's] employment performance, VINYA's and DESA's *wrongful termination* of [plaintiff's] employment, and VINYA's and DESA's *refusal to pay [plaintiff] his bonuses and grant the promised ownership* were all made to intentionally inflict emotional distress on [plaintiff], which they did.

14

Complaint, ¶ 24 (italics added).  The only *conduct* alleged in this paragraph is the making of unspecified "false accusations and misrepresentations," the "wrongful termination" of plaintiff's employment, and the "refusal to pay" bonuses and the refusal to "grant the promised ownership."  The Complaint does not allege, even conclusorily, that these acts were accompanied by conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Carrol, supra, 262 Conn. at 443, 815 A.2d at 126; Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062.  See also Huff, supra, 10 F.Supp.2d at 122-23 ("[m]ere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.  Even "notice pleading" under the Federal Rules requires the allegation of minimal supporting facts") (citations and quotation marks omitted).

In Emanuele v. Baccaccio & Susanin, No. CV90 037 96 67 S, 1994 WL 702923 (Conn. Super. Apr. 10, 1992), the plaintiff alleged claims for intentional infliction of emotional distress virtually identical to that alleged here.  The "plaintiff claim[ed] that the defendant made *false accusations regarding the plaintiff's work performance* and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of *depriving her of benefits and compensation*." Emanuele, supra, 1994 WL 702923 at *3 (italics added).  The court granted the defendant's motion to strike these claims, holding that these allegations "failed to allege the extreme and outrageous conduct required to maintain a claim for intentional infliction of emotional distress."  Emanuele, supra, 1994 WL 702923 at *3.  See also Padula, supra, 2006 WL 3042660 at *8-10 (allegations that the defendant "made the conditions

15

upon which the plaintiff was terminated absolutely intolerable with her false accusations, manner of interrogation and hostile environment" and that these were "calculated to cause the plaintiff mental distress" failed to state a claim for intentional infliction of emotional distress); <u>Muniz v. Kravis</u>, 59 Conn.App. 704, 710, 757 A.2d 1207, 1212 (Conn. App. 2000) ("[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior"); <u>Meade v. Yale University</u>, No. CV054016155, 2006 WL 2730320 at *8 (Conn. Super. Sept. 7, 2006) ("Connecticut courts have been unwilling to allow a plaintiff to premise a claim of intentional infliction of emotional distress solely upon the fact that the plaintiff was terminated from his or her employment").

Thus, it is clear that Count Seven fails to state a claim for intentional infliction of emotional distress, requiring its dismissal.

## POINT IV

### COUNT EIGHT FAILS TO STATE A CLAIM FOR VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

The Complaint fails to state a legally viable claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a, et <u>seq</u>. This statute provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any *trade or commerce*." Conn. Gen. Stat. § 42-110b(a) (italics added). Trade or commerce, in turn, is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).

16

Thus, "[t]o state a claim under CUTPA, the plaintiff must allege that the actions of the defendant were performed in the conduct of 'trade or commerce.' " Muniz, supra, 59 Conn.App. at 711, 757 A.2d at 1212.  It is well-settled that an employer-employee relationship does *not* constitute "trade or commerce" within the meaning of CUTPA.  See, e.g., Fenn v. Yale University, 283 F.Supp. 615, 639 (D. Conn. 2003) ("although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA"); Kinter v. Nidec-Torin Corp., 662 F.Supp. 112, 113 (D. Conn. 1987) (neither employers' actions during employment nor in inducing employment provide a basis for a CUTPA violation); Muniz, supra, 59 Conn. App. at 711, 757 A.2d at 1213 ("[t]he trial court properly held that an employment relationship does not constitute trade or commerce for purposes of CUTPA").

In addition, "[t]o state a cause of action for a CUTPA violation, the plaintiff must allege that the issue was *more than a private conflict between parties within the same business*." Wadsworth v. Casle Corp., No. CV065002921, 2006 WL 2948848 at *2 (Conn. Super. Sep. 29, 2006) (italics added).

Here, the Complaint alleges that Defendants engaged in unfair or deceptive acts in the conduct of its business "by making false and misleading statements to its *employees* and investors" which "may have induced investors" to violate unspecified "SEC regulations", and that "[t]hese deceptive trade practices *may have affected* the earnings and value of VINYA which prevented VINYA and DESA from *paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA*." See Complaint, ¶¶ 26, 27 (italics added).

17

Since an employer's actions vis-à-vis its employees provide no basis for liability under CUTPA, the allegation that Defendants made "false and misleading statements to [their] employees" clearly fails to state a claim. Fenn, supra, 283 F.Supp. at 639; Kinter, 662 F.Supp. at 113; Muniz, supra, 59 Conn. App. at 711, 757 A.2d at 1213.

Presumably, plaintiff will argue that the allegation that Defendants made "false and misleading statements to … investors" sets forth actionable conduct outside of his employment relationship with Defendants. The Complaint, however, does not allege that plaintiff himself was one of these investors, or that he sustained any loss *as an investor*. Rather, he claims that these statements to investors indirectly "prevented [Defendants] from paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA." See Complaint, ¶ 27. Thus, the only loss that plaintiff purportedly sustained was within the context of the employment relationship.

In Fortunato v. Office of Stephen M. Silson, 48 Conn. Super. 636, 856 A.2d 530 (Conn. Super. 2004), the plaintiff alleged that her employer, a dentist, violated CUTPA by firing her because her daughter had contemplated bringing a malpractice action against plaintiff's employer. The court found that while the "triggering event" of the daughter's malpractice action occurred outside of the employment relationship, the conduct which was the "central focus" of the action and the behavior "deemed worthy of suit" took place within the employment relationship, i.e., the employer's termination of plaintiff. Fortunato, supra, 48 Conn. Super. at 642, 856 A.2d at 534. The court therefore dismissed the CUTPA claim.

As in <u>Fortunato</u>, <u>supra</u>, the conduct alleged to have taken place outside of the employment relationship in the instant case was, at most, the triggering event for conduct that took place inside that relationship and is the central focus of plaintiff's claim -- Defendants' alleged failure to pay him employment bonuses and grant him an ownership interest in the business. Such "private conflict between parties within the same business" cannot be the basis for liability under CUTPA. <u>Wadsworth</u>, <u>supra</u>, 2006 WL 2948848 at *2 ("alleg[ation] that the defendants' failure to transfer an ownership interest in [the defendant corporation] to him was 'unfair and has tended to deceive' the plaintiff" fails to state a claim under CUTPA).

Finally, plaintiff has not alleged the requisite "ascertainable loss" necessary to state a claim for a CUTPA violation. The Complaint alleges that Defendants' false statements to employee and investors "*may have* affected the earnings and value of VINYA which prevented [Defendants] from paying [plaintiff's] bonus compensation, and affected the value of [plaintiff's] promised ownership in VINYA." <u>See</u> Complaint, ¶ 27 (italics added).

Speculative loss resulting from conduct allegedly violative of CUTPA is insufficient to support a CUTPA claim. In <u>Criscuolo v. Shaheen</u>, 46 Conn. Supp. 53, 736 A.2d 947 (Conn. Super. 1999), the court held that the plaintiff's allegation that she "may potentially suffer increased tax liabilities" as a result of the defendant's conduct was insufficient to state a CUTPA claim. The court held that the plaintiff "relies on speculation rather than inference to establish her asserted loss, and it is the necessity of speculation that is fatal to her cause." <u>Criscuolo</u>, <u>supra</u>, 46 Conn. Supp. at 62, 736 A.2d at 953; <u>see also</u> <u>Ruiz v. Matos</u>, No. CV990336246S, 2002 WL 31831024 (Conn. Super.

Ct. Nov. 26, 2002) (plaintiff's allegation of a connection between defendant's use of a trade name at its newly-opened restaurant in breach of a contract not to use a similar trade name and the loss of revenue at plaintiff's restaurants was speculative and could not support a CUTPA violation).

It is clear that plaintiff has failed to plead a cause of action for violation of CUTPA.  Count Eight must therefore be dismissed as a matter of law.

## CONCLUSION

Based on the foregoing, Count Five of the Complaint must be dismissed because it fails to satisfy the requirements for pleading fraud under Rule 9(b) and Counts Six through Eight must be dismissed for failure to state a claim under Rule 12(b)(6).  The within motion should be granted in all respects.

Respectfully submitted,

VANDENBERG & FELIU, LLP
Attorneys for defendants

By:   s/Morlan Ty Rogers
        Morlan Ty Rogers (MR 3818)
110 East 42nd Street, Suite 1502
New York, NY 10017
(212) 763-6800

*Of Counsel*:
Alfred G. Feliu
Morlan Ty Rogers