UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BLERON BARALIU,                                     No. 07-cv-04626 (MHD)

                          Plaintiff,

            -against-

VINYA CAPITAL, L.P. and MICHAEL deSa,

                          Defendants.

------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**



VANDENBERG & FELIU, LLP
Attorneys for defendants
110 East 42nd Street, Suite 1502
New York, NY 10017
(212) 763-6800

*Of Counsel*:
Alfred G. Feliu
Morlan Ty Rogers

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................1

ARGUMENT ...........................................................................................................................4

      POINT I

      THE STANDARD OF REVIEW FOR A
      MOTION FOR JUDGMENT ON THE PLEADINGS .......................................................4

      POINT II

      COUNT FIVE MUST BE DISMISSED FOR
      FAILURE TO STATE A CLAIM AND FAILURE
      TO PLEAD FRAUD WITH PARTICULARITY.................................................................5

      POINT III

      COUNT SIX FAILS TO STATE A CLAIM FOR
      EITHER WRONGFUL TERMINATION OR DEFAMATION ......................................10

            A.    Wrongful Termination ................................................................10

            B.    Defamation ..................................................................................14

      POINT IV

      COUNT SEVEN FAILS TO STATE A CLAIM FOR
      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ......................................17

      POINT IV

      COUNT ONE AND TWO ARE REFUTED BY DOCUMENTARY
      EVIDENCE AND FAIL TO STATE A CLAIM AS A MATTER OF LAW ..................21

CONCLUSION.......................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

Ad-Hoc Comm. of Baruch Black and Hispanic
Alumni Ass'n v. Bernard M. Baruch College,
835 F.2d 980 (2d Cir.1987) ............................................................. 4

Appleton v. Board of Educ. of Town of Stonington,
254 Conn. 205, 757 A.2d 1059 (Conn. 2000) ...............................17, 18, 19

Baron v. Port Authority of N.Y. and N.J., 271 F.3d 81
(2d Cir. 2001) ..........................................................................11

Berte v. Haddam Hills Academy, Inc., 40 Conn. L. Rptr. 565,
2005 WL 3624553 (Conn. Super. Dec. 16, 2005) ....................... 15

Bodgan v. Schultz, No. CV065000413, 2006 WL 2578789
(Conn. Super. Aug. 17, 2006) ........................................... 15

Brady v. Calyon Securities, 406 F.Supp.2d 307 (S.D.N.Y. 2005) ............................... 8

Brass v. Am. Film Techs., Inc., 987 F.2d 142 (2d Cir. 1993) ........................................5

Brett Fabrics, Inc. v. Garan, Inc., 170 A.D.2d 253,
565 N.Y.S.2d 521 (1st Dep't 1991) ...................................................... 7-8

Cappelli v. State Farm Mut. Auto. Ins. Co., 259 A.D.2d 581,
686 N.Y.S.2d 494 (2d Dep't 1999) .....................................................22

Carbone v. Atlantic Richfield Co., 204 Conn. 460,
528 A.2d 1137 (Conn. 1987) ........................................................ 12

Carrol v. Allstate Ins. Co., 262 Conn. 433, 815 A.2d 119
(Conn. 2003) ....................................................................... 18, 19

Cellamare v. Millbank, Tweed, Hadley & McCloy LLP,
No. 03-CV-0039, 2003 WL 22937683 (E.D.N.Y. Dec. 2, 2003) ................................ 11

Citibank, N.A. v. Itochu Int'l, Inc., No. 01 Civ. 6007,
2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003) .................................................... 4

Craig v. Colonial Penn Ins. Co., 335 F.Supp.2d 296 (D. Conn. 2004) ........................14

Cweklinsky v. Mobil Chemical Co., 267 Conn. 210,
837 A.2d 759 (2004) .................................................................................................14

Dooley v. Metropolitan Jewish Health System, No. 02-CV-4640,
2003 WL 22171876 (E.D.N.Y. July 30, 2003) ........................................... 11

Emanuele v. Baccaccio & Susanin, No. CV90 037 96 67 S,
1994 WL 702923 (Conn. Super. Apr. 10, 1992) ................................... 19, 20

Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129
(D. Conn. 2001) ........................................................................................ 18

Fiorella v. Galena Associates, LLC, 21 Conn. L. Rptr. 58,
1997 WL 746378 (Conn. Super. Nov. 21, 1997) ....................................... 13

First Capital Asset Management, Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004) ..........................................................................6

Fishman v. Answer Connecticut, Inc., No. X08CV020192099,
2004 WL 2165956 (Conn. Super. July 8, 2004) ......................................17

Forgione v. Bette, No. CV 04 4001099, 2005 WL 1545278
(Conn. Super. June 2, 2005) ....................................................................15, 16

Gambardella v. Apple Health Care, Inc., 86 Conn.App. 842,
863 A.2d 735 (Conn. App. 2005) ..........................................................12, 13

Gavish v. Revlon, Inc., No. 00 Civ. 7291, 2004 WL 2210269
(S.D.N.Y. Sept. 30, 2004) .......................................................................... 4

Health-Chem Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990) ........................................ 22

Hertz Corp. v. City of New York, 1 F.3d 121
(2d Cir.1993), cert. denied, 510 U.S. 1111 (1994) .................................. 4

Horn v. New York Times, 100 N.Y.2d 85, 760 N.Y.S.2d 378 (2003) ........................................ 11

Huff v. West Haven Board of Education, 10 F.Supp.2d 117
(D. Conn. 1998) ................................................................................ 17, 19

IUE AFL-CIO Pension Fund v. Herrmann,
9 F.3d 1049 (2d Cir.1993), cert. denied,
513 U.S. 822, 130 L.Ed.2d 38 (1994); .................................................. 4

JP Morgan Chase Bank v. Winnick, 350 F.Supp.2d 393
(S.D.N.Y. 2004) ............................................................................................9

Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115
(D. Conn. 1998) ................................................................. 15

Legowski v. O'Keefe, 26 Conn. L. Rptr. 662, 2000 WL 295358
(Conn. Super. Mar. 2, 2000) .............................................16

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) ..................... 6, 7, 9

Lincoln Place LLC v. RVP Consulting, Inc., 16 A.D.3d 123,
791 N.Y.S.2d 31 (1st Dep't 2005) ....................................... 7

Lobosco v. New York Telephone Company/NYNEX,
96 N.Y.2d 312, 727 N.Y.S.2d 383 (2001) ............................11

Meade v. Yale University, No. CV054016155, 2006 WL 2730320
(Conn. Super. Sept. 7, 2006) ............................................. 20

Meyercord v. Curry, 38 A.D.3d 315, 832 N.Y.S.2d 29
(1st Dep't 2007) ..............................................................8

Miner v. Town of Cheshire, 126 F.Supp.2d 184 (D. Conn. 2000) .........................17, 18

Morris v. Hartford Courant Co., 200 Conn. 676,
513 A.2d 66 (Conn. 1986) ...............................................12

Muniz v. Kravis, 59 Conn.App. 704, 710, 757 A.2d 1207
(Conn. App. 2000) ........................................................ 20

Padula v. Weston, No. CV064014462S, 2006 WL 3042660
(Conn. Super. Oct. 16, 2006) ........................................ 18, 20

Papasan v. Allain, 478 U.S. 265, 92 L.Ed.2d 209 (1986) ................... 4

Prentice v. Apfel, 11 F. Supp. 2d 420 (S.D.N.Y. 1998) .................... 5

Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610,
1993 WL 338633 (Conn. Super. Aug. 26, 1993) ........................... 12, 13, 14

Rajbhandari v. Shah, 02 Civ. 8778, 2006 WL 74393
(S.D.N.Y. Jan. 11, 2006) ................................................ 6, 7

Reyes v. Ames Dept. Stores, Inc., 10 Conn. L. Rptr. 625,
1994 WL 30014 (Conn. Super. Jan. 18, 1994) ......................... 13

Sachtjen v. Saverin, No. CV 990364004S, 2000 WL 38004
(Conn. Super. Jan. 5, 2000) ...........................................................................14

Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471,
427 A.2d 385 (Conn. 1980) ............................................................................12

Sheppard v. Beerman, 18 F.3d 147 (2d Cir.),
cert. denied, 513 U.S. 816 (1994) .................................................................. 4

Shields v. Citytrust Bancorp., 25 F.3d 1124 (2d Cir. 1994) ..................................... 6, 9

Stamm v. Barclays Bank of New York, 960 F.Supp. 724
(S.D.N.Y. 1997), aff'd 153 F.3d 30 (2d Cir. 1998) ...................................... 5

Todd v. Oppenheimer & Co., Inc., 78 F.R.D. 415
(S.D.N.Y. 1978) ............................................................................................. 5

U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58
(D. Conn. 2006) .............................................................................................. 9

Yak v. Bank Brussels Lambert, 252 F.3d 127 (2d Cir. 2001) ...................................... 4

## Other Authorities

Fed. R. Civ. P. 9(b). ............................................................................. *passim*

**Preliminary Statement**

Defendants Vinya Capital, L.P. ("Vinya") and Michael deSa ("deSa") (collectively, "Defendants"), by their attorneys Vandenberg & Feliu, LLP, respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rules 12(c) and 9(b) of the Federal Rules of Civil Procedure, for judgment on the pleadings dismissing Counts One, Two, Five, Six and Seven of plaintiff's amended complaint (the "Amended Complaint") for failure to state a claim and failure to plead fraud with particularity.

**Background**

Defendant Vinya was an investment management company and defendant deSa its managing member. After several years of substantial losses, Vinya ceased operating last year, when its remaining customers pulled their investments out. It has no assets.

Plaintiff -- formerly an at-will employee[1] of Vinya -- commenced this action claiming that he had been denied compensation and an ownership interest in Vinya that allegedly had been promised to him during the period of his employment, and that he had been wrongfully terminated.

Plaintiff originally commenced this action on August 17, 2006 in the United States District Court for the District of Connecticut, where it was assigned to the Honorable Alfred V. Covello, United States District Judge under case no. 3:06-cv-01286-AVC. Plaintiff's original complaint (the "Original Complaint") asserts eight causes of action – breach of contract (Counts One through Four), fraud and misrepresentation (Count Five), wrongful termination and defamation (Count Six), intentional infliction of

---

[1] See Point III(A) *infra* for an in-depth discussion of plaintiff's status as an at-will employee.

emotional distress (Count Seven), and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Eight). A copy of the Original Complaint is annexed as Exhibit "A" to the accompanying affidavit of Morlan Ty Rogers ("Rogers Aff.").

Several of the claims in the Original Complaint – i.e., the breach of contract and fraud claims – arise under, or in connection with, a written employment agreement that contains a mandatory forum selection clause designating the instant Court or the state courts of New York as the exclusive forum and jurisdiction for this action. Because of this, defendants moved to dismiss Counts One through Five based on improper venue. Said motion *also* sought dismissal of Counts Five through Eight based on failure to state a claim and failure to plead fraud with particularity.

In a Ruling dated May 7, 2007 (Rogers Aff., Exhibit "B"), Judge Covello granted defendants' motion to the extent of transferring the entire action to the instant Court on the basis of the forum selection clause. Said Ruling did *not* address or rule upon the branches of defendants' motion seeking dismissal of Counts Five, Six, Seven and Eight of the Original Complaint pursuant to Rules 12(b)(6) and 9(b) for failure to state a claim and failure to plead fraud with particularity.

Upon transfer to this Court, defendants moved to dismiss those claims before the Honorable Victor Marrero, the District Judge to whom this case was assigned. Before plaintiff served opposing papers, Judge Marrero held a conference and requested that the parties attempt to resolve the issues raised in the motion in an amended pleading. Although defendants sought discontinuance of multiple counts, plaintiff's proposed amended complaint dropped only Count Eight which alleged a CUTPA claim. It was agreed that defendants would serve an answer and they reserved their right to challenge

the sufficiency of the remaining counts in a subsequent motion. Thereafter, plaintiff served his Amended Complaint (Rogers Aff., Exhibit "C"), defendants served their Answer and Counterclaims (Rogers Aff., Exhibit "D"), and plaintiff served an Answer to the Counterclaims (Rogers Aff., Exhibit "E").

The parties agreed to proceed for all purposes before a Magistrate Judge (Rogers Aff., Exhibit "F"). Pursuant to Judge Marrero's April 4, 2008 Order of Reference (Rogers Aff., Exhibit "G"), this case was assigned for all purposes to Magistrate Judge Michael H. Dolinger. The parties' Civil Case Management Plan and Scheduling Order specifically contemplates the within motion for judgment on the pleadings. (Rogers Aff., Exhibit "H").

As set forth below, the Amended Complaint does not resolve the pleading defects of the Original Complaint. The fraud claim (Count Five) is legally insufficient and must be dismissed pursuant to Fed. R. Civ. P. 12(c) and 9(b). In addition, plaintiff's claims for wrongful termination and defamation (Count Six) and intentional infliction of emotional distress (Count Seven) fail to state a claim, requiring judgment dismissing those claims pursuant to Fed. R. Civ. P. 12(c). Moreover, the first breach of contract claim (Count One) is conclusively refuted by the terms of a subsequent written modification to plaintiff's employment agreement with Vinya, and the second breach of contract claim (Count Two) does not plead that certain conditions precedent to Vinya's performance under that modified agreement ever occurred, rendering that claim legally insufficient.

**ARGUMENT**

**POINT I**

**THE STANDARD OF REVIEW FOR A
MOTION FOR JUDGMENT ON THE PLEADINGS**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.) (citing Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987)), cert. denied, 513 U.S. 816 (1994). On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all allegations contained in the complaint are taken as true and all inferences are drawn in the plaintiff's favor. See Papasan v. Allain, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1058 (2d Cir.1993), cert . denied, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir.1993), cert. denied, 510 U.S. 1111 (1994). However, "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" and will not defeat the motion. Gavish v. Revlon, Inc., No. 00 Civ. 7291 (SHS), 2004 WL 2210269, at *10 (S.D.N.Y. Sept. 30, 2004) (quoting Citibank, N.A. v. Itochu Int'l, Inc., No. 01 Civ. 6007 (GBD), 2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003)).

In deciding a motion for judgment on the pleadings, this Court may consider the pleadings, attached exhibits, and unattached documents that are incorporated into the complaint by reference. See Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (where a plaintiff chooses not to attach pertinent documents that are integral to his complaint, the defendant may introduce the documents as exhibits to its

motion attacking the pleading); <u>Prentice v. Apfel</u>, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993)); <u>Stamm v. Barclays Bank of New York</u>, 960 F.Supp. 724, 730 (S.D.N.Y. 1997) ("it is appropriate to consider documents upon which the complaint relies and which are integral to the complaint … without converting the motion to one for summary judgment"), <u>aff'd</u> 153 F.3d 30 (2d Cir. 1998).

## POINT II

### COUNT FIVE MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FAILURE TO PLEAD FRAUD WITH PARTICULARITY

Count Five of the Complaint must be dismissed because it fails to state a claim and does not satisfy the particularity requirements for pleading fraud.

Rule 9(b) of the Federal Rules of Civil Procedure[2] requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  This is meant to protect defendants from harm resulting from meritless charges of serious wrongdoing and inhibit the filing of complaints as a pretext for discovering unknown wrongs.  <u>Todd v. Oppenheimer & Co., Inc.</u>, 78 F.R.D. 415, 419 (S.D.N.Y. 1978).  It also assures that defendants are given notice of the exact nature of the fraud claimed, sufficient to permit them to respond.  Rule 9(b) "is a more stringent rule than merely to require specificity sufficient to 'inform a defendant (as to) what the plaintiff is talking about.'"  <u>Todd</u>, <u>supra</u>, 78 F.R.D. at 419.

---

[2] The level of specificity required for pleadings in a diversity case in federal court is governed by federal procedural rules.  <u>Stirling Homex Corp. v. Homasote Co.</u>, 437 F.2d 87, 88 n.2 (2d Cir. 1971); <u>United Feature Syndicate, Inc. v. Miller Features</u>, 216 F.Supp.2d 198, 220 n.8 (S.D.N.Y. 2002).

To satisfy this rule, a plaintiff must therefore "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain *why* the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (italics added); Shields v. Citytrust Bancorp., 25 F.3d 1124, 1128 (2d Cir. 1994).  See also Rajbhandari v. Shah, 02 Civ. 8778, 2006 WL 74393 at *6 (S.D.N.Y. Jan. 11, 2006) ("[t]o satisfy the particularity requirement of Rule 9(b), Plaintiff must adequately specify the statements he claims were false or misleading, *give particulars as to the respect in which he contends the statements were fraudulent*, state when and where the statements were made, and identify those responsible for the statements") (italics added).  Besides alleging the particular details of a fraud, "the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent."  First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) (italics in original); Shields, supra, 25 F.3d at 1128.

In Count Five of the Amended Complaint, plaintiff claims that deSa made the following representations to him:

- That Vega Asset Management had committed to seed Vinya with an investment of $250 million (Amended Complaint, ¶ 33);

- That Goldman Sachs had orders in the range of $1.3 Billion to invest in Vinya (Amended Complaint, ¶ 33);

- That deSa had decided to close the fund at $500 million and that the fund would start with $500 million in Q4 of 2004 (Amended Complaint, ¶ 33).

The Amended Complaint alleges that these statements were fraudulent, but does not explain *why*, let alone give any particulars as to the respect in which these statements were supposedly fraudulent.  <u>Lerner</u>, <u>supra</u>, 459 F.3d at 290; <u>Rajbhandari</u>, <u>supra</u>, 02 Civ. 8778, 2006 WL 74393 at *6.  Clearly, these alleged statements cannot support a fraud claim.

Count Five must also be dismissed because plaintiff cannot show an essential element of a fraud claim – reasonable reliance.  The Amended Complaint claims that deSa made the following representations to plaintiff, reflecting future intentions or expectations:

- ■ That "Country EQ" was going to invest over $500 million in Vinya in 2005 and 2006 (Amended Complaint, ¶ 34);

- ■ That deSa was going to invest $1,000,000 in Vinya by 1 June 2005 to finance Vinya's operations through the end of 2006 (Amended Complaint, ¶ 35);

- ■ That MBIA was going to invest $50 to $100 million in Vinya (Amended Complaint, ¶ 36);

In reliance upon these alleged statements, plaintiff claims that he forewent "other potential employment opportunities in the industry as well as expected bonuses." Amended Complaint, ¶ 39.

It is well established that statements of future intentions or expressions of hope such as those claimed by plaintiff are not actionable as fraud.  <u>Lincoln Place LLC v. RVP Consulting, Inc.</u>, 16 A.D.3d 123, 124, 791 N.Y.S.2d 31, 33 (1st Dep't 2005); <u>Brett</u>

Fabrics, Inc. v. Garan, Inc., 170 A.D.2d 253, 254, 565 N.Y.S.2d 521, 522 (1st Dep't 1991).

For example, in Brady v. Calyon Securities, 406 F.Supp.2d 307 (S.D.N.Y. 2005), the plaintiff -- as here, an at-will employee of the defendant -- claimed that he had been fraudulently induced to remain as the defendant's employee by assurances that certain violations of the securities laws would be rectified, that he relied upon these assurances in declining an offer from another employer, and that the defendant never intended to correct the violations. The plaintiff dismissed the plaintiff's fraudulent inducement, holding that he could not show reasonable reliance as a matter of law because he was an at-will employee.

> In New York, claims of fraudulent inducement based on future promises made to an at-will employee are not cognizable. A key element of a fraudulent inducement claim is reasonable reliance. Because an at-will employee may be terminated at any time, *any reliance on any representations of future intentions, such as job security or in this case, future changes, is deemed unreasonable as a matter of law*. Because Brady is an at-will employee, he cannot allege any reasonable reliance on his employer's representations.

Brady, supra, 406 F.Supp.2d at 316-17 (citations omitted, italics added). See also Meyercord v. Curry, 38 A.D.3d 315, 316, 832 N.Y.S.2d 29, 31 (1st Dep't 2007) (dismissing fraudulent inducement claim; "Under the employment agreement, plaintiff was an employee at will, and as such, could be terminated at any time. In such circumstances, any reliance on representations of future intentions, such as job security or future changes, would be deemed unreasonable as a matter of law").

Plaintiff's supposed reliance upon the alleged representation concerning MBIA's proposed future investment of $50 to $100 million in Vinya is further undermined by his assertion that such investment would be in violation of SEC Regulation Fin 46 (Amended Complaint, ¶ 36).  Plaintiff does not claim that defendants affirmatively told him that MBIA's proposed investment would comply with government regulations, and nowhere in the Amended Complaint does plaintiff -- a sophisticated trader who allegedly was ranked by Trader Magazine in 2007 as among the top 30 traders under 30 years of age in the world (Amended Complaint, ¶ 45) -- claim that he was ignorant of this regulation.  See JP Morgan Chase Bank v. Winnick, 350 F.Supp.2d 393, 405 (S.D.N.Y. 2004) ("where a plaintiff actually knew at the time a representation was made that it was false, [h]e cannot claim to have relied on the truth of that representation, and any injury [h]e suffers is therefore not attributable to the defendant").

Count Five also fails to plead an essential element of a fraud claim – scienter on the part of defendants – with the particularity required by Fed.R.Civ. P. 9(b).

> Although scienter, or fraudulent intent, may be pled generally, a plaintiff still must allege facts that give rise to a "strong inference" of fraudulent intent.  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994).  A strong inference can be established either "(a) by alleging facts to show that defendants had both the motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Id.

U.S. ex rel. Smith v. Yale University, 415 F.Supp.2d 58, 83 (D. Conn. 2006); Lerner, supra, 459 F.3d at 290-91.

Here, the Amended Complaint does nothing more than allege conclusorily that the representations allegedly made by deSa were "false statements" and that he made them "knowingly". Amended Complaint, ¶ 33. It does not allege any facts that would give rise to a "strong inference" that defendants knew that these alleged representations were false and that defendants had an intent to defraud.

Based on the foregoing, it is clear that the fraud claim must be dismissed as legally insufficient under Rule 12(c) and for lack of particularity pursuant to Rule 9(b).

**POINT III**

**COUNT SIX FAILS TO STATE A CLAIM FOR
EITHER WRONGFUL TERMINATION OR DEFAMATION**

Count Six asserts a tort claim for wrongful termination and defamation. It claims that plaintiff's "employment was wrongfully terminated, on 2 December 2005, based on false claims by DESA that [plaintiff] had violated company policy and further false comments by DESA about his job performance." Amended Complaint, ¶ 43. As shown below, the Amended Complaint fails to state a claim for either wrongful termination or defamation.

**A.    Wrongful Termination**

The wrongful termination claim is not legally viable because plaintiff was unquestionably an "at will" employee; the Employment Agreement set forth no fixed term for plaintiff's employment and expressly designated his employment as "at will". See Employment Agreement, ¶ 3. Moreover, Vinya was "free to ask [plaintiff] to leave and terminate [his] employment, at any time, with or without cause." See Employment Agreement, ¶ 3. The Employment Agreement expressly provides that New York law

shall govern the construction, interpretation and enforcement thereof.  See Employment Agreement, ¶ 13(a).

Under New York law, an individual employed, as here, pursuant to a contract for an indefinite term is presumed to be an "at will" employee who can be terminated for any reason or no reason.  Lobosco v. New York Telephone Company/NYNEX, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 385 (N.Y. 2001) ("[w]here the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason").

There are no exceptions to this rule.  "New York does not recognize the tort of wrongful discharge [and] there is no exception for firings that violate public policy such as, for example, discharge for exposing an employer's illegal activities."  Lobosco, supra, 96 N.Y.2d at 316, 727 N.Y.S.2d at 385, quoted in Cellamare v. Millbank, Tweed, Hadley & McCloy LLP, No. 03-CV-0039, 2003 WL 22937683 at *9 (E.D.N.Y. Dec. 2, 2003) (granting motion to dismiss); Baron v. Port Authority of N.Y. and N.J., 271 F.3d 81 (2d Cir. 2001) (noting "the clarity with which the New York Court of Appeals spoke in Lobosco").  See also Horn v. New York Times, 100 N.Y.2d 85, 96, 760 N.Y.S.2d 378, 384 (N.Y. 2003) ("We have consistently declined to create a common-law tort of wrongful or abusive discharge, or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts"); Dooley v. Metropolitan Jewish Health System, No. 02-CV-4640, 2003 WL 22171876 at *4 (E.D.N.Y. July 30, 2003) ("the New York Court of Appeals has repeatedly turned back attempts to curtail the scope of the employment-at-will rule by, for example,

providing for a cause of action for wrongful discharge or for terminations that contradict public policy").  As an "at will" employee, plaintiff clearly has no claim for wrongful termination.

Even if Connecticut law governed, the Amended Complaint would still fail to state a claim for wrongful termination.  Under Connecticut law, an "at will" employee can be terminated for any reason or no reason so long as the termination does not violate an important public policy.  Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-77, 427 A.2d 385 (Conn. 1980) (recognizing that the termination of an at-will employee in violation of an important public policy is actionable as a wrongful termination); Morris v. Hartford Courant Co., 200 Conn. 676, 678, 513 A.2d 66, 67 (Conn. 1986) (there is a "narrow public policy exception to the general proposition that contracts for an indefinite term of employment are terminable at will").

To maintain a claim for wrongful discharge from at-will employment, "the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy."  Morris, supra, 200 Conn. at 679, 513 A.2d at 68; Gambardella v. Apple Health Care, Inc., 86 Conn.App. 842, 853, 863 A.2d 735, 743 (Conn. App. 2005) ("A cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy").  See also Carbone v. Atlantic Richfield Co., 204 Conn. 460, 528 A.2d 1137 (Conn. 1987) (termination of an employee in an unreasonable and abusive manner does not violate public policy); Rafael v. St. Vincent's Medical Center, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *2 (Conn. Super. Aug. 26, 1993) ("not every act in

derogation of a general statute, nor all conduct contrary to the common law, rises to the level of a violation of an *important* public policy") (italics in original).

A wrongful termination claim under Connecticut law cannot be based on allegations that an employer made false accusations of theft and dishonesty in connection with discharging an employee. This is so even where the plaintiff alleges that the false accusations were made intentionally and with knowledge of their falsity. Gambardella, supra, 86 Conn. App. at 852, 854, 863 A.2d at 742, 743 (affirming dismissal of wrongful termination claim; allegation that the defendants terminated the plaintiff employment for theft, but "knew at the time that the plaintiff had not committed theft" did not allege a violation of any important public policy); Reyes v. Ames Dept. Stores, Inc., 10 Conn. L. Rptr. 625, 1994 WL 30014 at *1-2 (Conn. Super. Jan. 18, 1994) (granting motion to strike wrongful discharge claim; allegations that employer maliciously and intentionally made false accusation of theft in order to discharge employee "do not rise to the level of a violation of an important public policy"); Rafael, supra, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3 (same); Fiorella v. Galena Associates, LLC, 21 Conn. L. Rptr. 58, 1997 WL 746378 at *1, 4 (Conn. Super. Nov. 21, 1997) (allegation that defendant "falsely accused the plaintiff of stealing company funds, knowing these accusations to be false … failed to allege a violation of public policy sufficient to state a cause of action for wrongful termination").

In the above cases, intentionally false accusations of criminality were insufficient to state a claim for wrongful discharge. Here, the Amended Complaint does not even allege that Defendants accused plaintiff of criminality. It merely alleges that (a) Defendants accused plaintiff of violating some unspecified "company policy" and made

comments about his performance, and (b) that these accusations and comments were false. These allegations do not implicate any conceivable "public policy" important enough to overcome "the well established rule that an employee at will is terminable at will." Rafael, supra, 9 Conn. L. Rptr. 610, 1993 WL 338633 at *3.

Furthermore, the Amended Complaint does not allege that Defendants knew of the falsity of the accusations and comments allegedly made by them. Even if the Amended Complaint alleged this, it would still be insufficient as a matter of law. See Sachtjen v. Saverin, No. CV 990364004S, 2000 WL 38004 at *3 (Conn. Super. Jan. 5, 2000) ("[e]ven construing the facts most favorable to the plaintiff and assuming that the defendants did knowingly make false accusations [that plaintiff was involved in a business plan to compete against defendant], such actions are not sufficient to violate an important public policy").

Clearly, plaintiff's "wrongful termination" claim cannot withstand the instant motion to dismiss.

**B.    Defamation**

Plaintiff's defamation claim must be dismissed because several of the elements required for such a claim are pleaded insufficiently or not at all.

> To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217, 837 A.2d 759, 763-64 (2004);

Craig v. Colonial Penn Ins. Co., 335 F.Supp.2d 296, 312 (D. Conn. 2004).

Because Rule 8 requires that a complaint afford the defendant sufficient notice of the communications complained of to enable him to defend himself, "[a] complaint is insufficient to withstand dismissal for failure to state a cause of action where, other than the bare allegation that the defendant's actions caused injury to plaintiff's reputation, the complaint sets forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made." Kloth v. Citibank (South Dakota), N.A., 33 F.Supp.2d 115, 121 (D. Conn. 1998) (emphasis added); Forgione v. Bette, No. CV 04 4001099, 2005 WL 1545278 at *5 (Conn. Super. June 2, 2005) ("defamation must be pleaded with specificity, identifying 'what allegedly defamatory statements were made, by whom and to whom'").

> In order to respond to a claim of defamation, a defendant has to know something about the nature of the statements allegedly made. Notice of course, is an issue; perhaps equally persuasive is the need to frame pleadings appropriately. There are a number of special defenses, for example, that may or may not be appropriate, depending on the nature of the statements alleged to have been made.

Berte v. Haddam Hills Academy, Inc., 40 Conn. L. Rptr. 565, 2005 WL 3624553 at *9 (Conn. Super. Dec. 16, 2005). See also Bodgan v. Schultz, No. CV065000413, 2006 WL 2578789 at *2 (Conn. Super. Aug. 17, 2006) (granting motion to strike; complaint did "not set forth specific facts to establish what defamatory statements were actually made and to whom these statements were published").

Here, the only allegations of Count Six even suggestive of defamation are found in paragraphs 43 and 47. Paragraph 43 contains a vague reference to (1) "false claims by DESA that [plaintiff] had violated company policy" and (2) "further false

comments" about plaintiff's job performance.   Amended Complaint, ¶ 43.  As to the former, the Amended Complaint does not set forth (a) the company policy that deSa allegedly claimed plaintiff had violated, (b) what deSa said about this, (c) to whom deSa spoke about this, (d) when deSa spoke about this, or (e) why deSa's words were false.  As to the latter, the Amended Complaint does not set forth (a) what deSa allegedly said about plaintiff's job performance, (b) what was false and defamatory about those comments, (c) to whom those comments were made, or (d) when those comments were made.

In paragraph 47 of the Amended Complaint, plaintiff alleges that deSa "made knowingly false statements about [him], claiming that he violated company policy in disclosing investor information."   In the very same paragraph, however, plaintiff acknowledges that he did, in fact, disclose such information.   Again, nowhere in the Amended Complaint does plaintiff set forth (a) the particulars of what deSa allegedly said about plaintiff's disclosure of investor information, (b) to whom deSa said this, (c) when deSa said this, or (d) why deSa's words were false.

The Amended Complaint's "fail[ure] to identify the specific subject matter of the alleged defamatory statements" requires dismissal of the defamation portion of Count Six, Forgione, supra, 2005 WL 1545278 at *5, as does its failure to name the person or persons to whom the allegedly defamatory statements were made.   Indeed, the Amended Complaint does not even allege that defamatory content was communicated to any third party, identified or not.  See Legowski v. O'Keefe, 26 Conn. L. Rptr. 662, 2000 WL 295358 at *3 (Conn. Super. Mar. 2, 2000) (granting motion to strike slander claim; "The court finds that the plaintiffs' complaint is devoid of any allegation that the alleged

16

remarks were published to a third person, a necessary predicate for a slander cause of action"); <u>Fishman v. Answer Connecticut, Inc.</u>, No. X08CV020192099, 2004 WL 2165956 at *3 (Conn. Super. July 8, 2004) (dismissing defamation claim for failure to state a claim where complaint did "not allege[] that the claimed defamatory statements were published by the defendants to any third person").

We further note that plaintiff's allegation of damage to his professional reputation from defamatory statements purportedly made at the time of his discharge in December 2005 (Amended Complaint, ¶¶ 43-44) is belied by his allegation that Trader Magazine ranked him, *in 2007*, among the top 30 traders under 30 years of age in the world with earning potential above $1,000,000 a year.   (Amended Complaint, ¶ 45). Clearly, plaintiff cannot state a legally viable defamation claim.

## POINT IV

### COUNT SEVEN FAILS TO STATE A CLAIM FOR <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

Count Seven must be dismissed because it fails to state a legally viable claim for intentional infliction of emotional distress.   To state such a claim under Connecticut law:

> Plaintiff must allege (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous, (3) that Defendants' conduct was the cause of the Plaintiffs distress, and (4) that the emotional distress sustained by the Plaintiff was severe.

<u>Huff v. West Haven Board of Education</u>, 10 F.Supp.2d 117, 122 (D. Conn. 1998); <u>Miner v. Town of Cheshire</u>, 126 F.Supp.2d 184, 194 (D. Conn. 2000); <u>Appleton v. Board of Educ. of Town of Stonington</u>, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (Conn. 2000).

In order to state a cognizable cause of action, the "[p]laintiff must not only allege each of the four elements, but also *must allege facts sufficient to support them*." Etienne v. Wal-Mart Stores, Inc., 186 F.Supp.2d 129, 136 (D. Conn. 2001) (italics added). "In the employment context, it is the employer's *conduct*, not the motive behind the conduct, that must be extreme or outrageous." Miner, supra, 126 F.Supp.2d at 195 (italics added).

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

Carrol v. Allstate Ins. Co., 262 Conn. 433, 443, 815 A.2d 119, 126 (Conn. 2003) (italics added) (citations and quotation marks omitted); Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062. See also Miner, supra, 126 F.Supp.2d at 195 ("Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress"). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is *initially a question for the court to determine*." Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062 (italics added); Etienne, supra, 186 F.Supp.2d at 136 (same); Padula v. Weston, No. CV064014462S, 2006 WL 3042660 at *8 (Conn. Super. Oct. 16, 2006) (same).

For his claim of intentional infliction of emotional distress, plaintiff alleges:

> 51.  VINYA and DESA had knowledge that these false accusations would damage [plaintiff's] career, would interfere with his employment prospects and that [plaintiff's] wife was expecting a child.

> 52.  Further, VINYA's and DESA's *false accusations and misrepresentations* regarding [plaintiff's] employment performance, VINYA's and DESA's *wrongful termination* of [plaintiff's] employment, and VINYA's and DESA's *refusal to pay [plaintiff] his bonuses and grant the promised ownership* were all made to intentionally inflict emotional distress on [plaintiff], which they did.

Amended Complaint, ¶¶ 51-52 (italics added).  The only *conduct* alleged in this paragraph is the making of unspecified "false accusations and misrepresentations," the "wrongful termination" of plaintiff's employment, and the "refusal to pay" bonuses and the refusal to "grant the promised ownership."  The Amended Complaint does not allege, even conclusorily, that these acts were accompanied by conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Carrol, supra, 262 Conn. at 443, 815 A.2d at 126; Appleton, supra, 254 Conn. at 210, 757 A.2d at 1062.  See also Huff, supra, 10 F.Supp.2d at 122-23 ("[m]ere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress.  Even "notice pleading" under the Federal Rules requires the allegation of minimal supporting facts") (citations and quotation marks omitted).

In Emanuele v. Baccaccio & Susanin, No. CV90 037 96 67 S, 1994 WL 702923 (Conn. Super. Apr. 10, 1992), the plaintiff alleged claims for intentional

19

infliction of emotional distress <u>virtually identical to that alleged here</u>.  The "plaintiff claim[ed] that the defendant made *false accusations regarding the plaintiff's work performance* and used coercion, threats and intimidation to force her to sign a document against her will, all for the purpose of *depriving her of benefits and compensation*." <u>Emanuele</u>, <u>supra</u>, 1994 WL 702923 at *3 (italics added).  The court granted the defendant's motion to strike these claims, holding that these allegations "failed to allege the extreme and outrageous conduct required to maintain a claim for intentional infliction of emotional distress." <u>Emanuele</u>, <u>supra</u>, 1994 WL 702923 at *3.  <u>See</u> <u>also</u> <u>Padula</u>, <u>supra</u>, 2006 WL 3042660 at *8-10 (allegations that the defendant "made the conditions upon which the plaintiff was terminated absolutely intolerable with her false accusations, manner of interrogation and hostile environment" and that these were "calculated to cause the plaintiff mental distress" failed to state a claim for intentional infliction of emotional distress); <u>Muniz v. Kravis</u>, 59 Conn.App. 704, 710, 757 A.2d 1207, 1212 (Conn. App. 2000) ("[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior"); <u>Meade v. Yale University</u>, No. CV054016155, 2006 WL 2730320 at *8 (Conn. Super. Sept. 7, 2006) ("Connecticut courts have been unwilling to allow a plaintiff to premise a claim of intentional infliction of emotional distress solely upon the fact that the plaintiff was terminated from his or her employment").

Thus, it is clear that Count Seven fails to state a claim for intentional infliction of emotional distress, requiring its dismissal.

**POINT V**

**COUNTS ONE AND TWO ARE REFUTED BY DOCUMENTARY
EVIDENCE AND FAIL TO STATE A CLAIM AS A MATTER OF LAW**

Count One of the Amended Complaint alleges that plaintiff "entered into [an employment] contract with VINYA and DESA" which provided, inter alia, for a guaranteed bonus of $150,000 due January 1, 2006. Amended Complaint, ¶¶ 10, 12. Alleging that Vinya has refused to pay such a bonus, plaintiff seeks damages of $150,000 under the terms of this agreement (the "Original Agreement").

Although the Amended Complaint alleges that both Vinya and deSa were, along with plaintiff, parties to the Original Agreement, the text of that agreement and its signature block (Rogers Aff., Exhibit "I") make clear that plaintiff and Vinya were the only parties and that deSa signed the agreement on Vinya's behalf and not in his personal capacity. To the extent that plaintiff asserts this contractual claim against deSa personally, the claim is meritless and deSa is entitled to judgment on the pleadings dismissing it as to him.

In addition, Count One must be dismissed in its entirety because plaintiff's right to the $150,000 bonus was extinguished by his execution of a written addendum to the Original Agreement (the "Addendum"), in which he explicitly gave up that bonus.

> As per our recent discussions, this Letter Agreement amends your original Employment Agreement with Vinya Capital, L.P. dated August 24, 2004. In the event of any conflict between this Letter Agreement and your original Employment Agreement, this Letter Agreement shall govern…. [Y]ou will not be paid your January 1, 2006 bonus of $150,000, but will instead receive a $1,000,000 investment under the name of Bleron Baraliu in the Vinya Global Fund, LLC when the aggregate assets under management in Vinya Global Portfolio, Ltd reach

21

$300,000,000; provided you continue to be employed by us
at such a time.

<u>See</u> Addendum (Rogers Aff., Exhibit "J") (emphasis added).[3]

Where, as here, "the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement." <u>Health-Chem Corp. v. Baker</u>, 915 F.2d 805, 811 (2d Cir. 1990); <u>Cappelli v. State Farm Mut. Auto. Ins. Co.</u>, 259 A.D.2d 581, 582, 686 N.Y.S.2d 494, 494 (2d Dep't 1999) ("[t]he modification of a contract results in the creation of a new contract between the parties which pro tanto *supplants* the affected provisions of the original agreement") (italics added).

Here, plaintiff explicitly gave up his right to a $150,000 bonus payable on January 1, 2006 – the subject of Count One – in exchange for a $1,000,000 investment in Vinya Global Fund, LLC to be granted if and when the aggregate assets under management in Vinya Global Portfolio, Ltd reach $300,000,000 and on the condition that plaintiff was still employed by Vinya at that time.

As set forth in paragraph 34 of defendants' Answer (Rogers Aff., Exhibit "D"), the conditions precedent to Vinya's obligation to grant the $1,000,000 investment to plaintiff -- the subject of Count Two -- never occurred. More importantly, Count Two does not allege that those conditions precedent occurred either, which renders that breach of contract claim legally insufficient. In addition, deSa is not a party to the Addendum

---

[3] Defendants' use of the Original Agreement and the Addendum as exhibits to this motion does <u>not</u> convert this Rule 12(c) motion into a Rule 56 motion for summary judgment. The Original Agreement is integral to Count One of the Amended Complaint, and its substance is set forth in paragraph 10 of the Amended Complaint. Likewise, the Addendum is integral to Count Two of the Amended Complaint, and its substance is set forth in paragraphs 14 and 16 of the Amended Complaint. As noted above, where a plaintiff chooses not to attach a pertinent document that is integral to the complaint, the defendant may introduce the document as an exhibit to its motion attacking the pleading. <u>Yak</u>, <u>supra</u>, 252 F.3d at 130; <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991); 5 C. Wright & A. Miller, <u>Federal Practice & Procedure</u> § 1327, at 489 & n.15.

22

and thus cannot be held personally liable for breach of contract even if Count Two stated a viable claim against Vinya. Defendants are therefore entitled to judgment on the pleadings dismissing Counts One and Two as a matter of law.

## **CONCLUSION**

Based on the foregoing, Counts One, Two, Five, Six and Seven of the Amended Complaint must be dismissed for failure to state a claim under Rule 12(c), and Count Five must also be dismissed for failure to satisfy the requirements for pleading fraud under Rule 9(b). The within motion should be granted in all respects.

Respectfully submitted,

VANDENBERG & FELIU, LLP
Attorneys for defendants

By: _Morlan Ty Rogers_____
    Morlan Ty Rogers (MR 3818)
110 East 42nd Street, Suite 1502
New York, NY 10017
(212) 763-6800

*Of Counsel*:
Alfred G. Feliu
Morlan Ty Rogers

23