UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Bleron Baraliu** | Civil Action No. 07CV04626(VM) |
|     Plaintiff | |
|     v. | **JURY TRIAL DEMANDED** |
| **Vinya Capital, L.P. and** | |
| **Michael deSa, individually, and in his** | |
|   capacity as Principal and Owner of | |
|   Vinya Capital, L.P.** | |
|     Defendants | October 5, 2007 |

## AMENDED COMPLAINT

Plaintiff, Bleron Baraliu, by his attorney, Alfred J. Smith, Jr., Esq., for his Amended Complaint, hereby states:

### PRELIMINARY STATEMENT

1.    This is a civil action in which the Plaintiff seeks an award of damages for injuries and losses suffered as the result of the actions of Defendants, including violations of contract terms and conditions, wrongful discharge, fraud, misrepresentation and deceit, intentional infliction of emotional distress, plus punitive damages, interest, costs and attorneys fees.

### JURISDICTION

2.    Jurisdiction is conferred on this Court by 28 U.S.C. section 1332 since this action arises under Diversity of Citizenship as the parties are citizens of different states.

3.    Venue is proper in this District as Defendant Vinya Capital, L.P., a Hedge Fund management company, on information and belief, is a Limited Partnership with its principal place of business in Stamford, Connecticut.

4.    Defendant deSa is a resident of Rye, New York.

5. Plaintiff is a resident of Millburn, New Jersey who was employed by the Defendants in Connecticut.

6. The amount in controversy exceeds $1,000,000 exclusive of interest, costs and attorneys fees.

## PARTIES

7. The Plaintiff, Bleron Baraliu (BARALIU), is a resident of Millburn, New Jersey.

8. Upon information and belief, at all times relevant to this action, Defendant, Vinya Capital, L.P., (VINYA), a Hedge Fund management company and Limited Partnership, had, and has, its principal place of business in Stamford, Connecticut.

9. Upon information and belief, Michael deSa (DESA) is a resident of Rye, New York.

## COUNT ONE

10. On or about September 7, 2004, BARALIU entered into a contract with VINYA and DESA under which he would be employed as a Foreign Exchange/Emerging Markets Trader. This contract promised BARALIU, among other benefits, a base salary of $175,000 per year, a signing bonus of $50,000 and further guaranteed bonuses of $100,000 and $150,000.

11. BARALIU commenced his employment and performed his duties, obligations and responsibilities with a high degree of excellence and proficiency.

12. Despite this performance by BARALIU, VINYA has refused to fulfill its obligations under this employment contract, including, but not limited to, the payment of the $150,000 bonus due January 1, 2006, ignoring several demands by BARALIU for its payment.

13. Therefore, BARALIU seeks damages of $150,000 under the terms of this employment contract with VINYA and DESA plus interest, costs and attorneys fees under this COUNT.

## COUNT TWO

14. In April 2005 at Defendant's headquarters in Stamford, CT, during the term of his Employment, VINYA and DESA made promises to, and entered into further contractual relationships, with BARALIU under which VINYA and DESA promised to pay BARALIU a bonus of $1,000,000 when the assets of the company reach $300,000,000.

15. At the same time, VINYA and DESA made false statements to BARILIU that an investor, "country EQ", was seriously considering investing over $500 million in the fund, that BARALIU's $1,000,000 bonus was virtually guaranteed.

16. Defendants, by these statements, coerced BARALIU into postponing the guaranteed bonus of $150,000, which was to be paid on 1 January, 2006.

17. BARALIU relied on the promises and statements made by VINYA and DESA, which the Defendants intended him to do, continued to fulfill all of his obligations and requirements to receive this bonus, and continued his employment with VINYA.

18. BARALIU thereby forewent other employment opportunities by declining solicitations from his network and headhunters in the industry.

19. Despite these promises and contractual obligations, VINYA and DESA have refused to pay BARALIU this $1,000,000 bonus, ignoring several demands by BARALIU for its payment.

20. Therefore, BARALIU seeks damages of $1,000,000 under the terms of this promise and

contractual obligation by VINYA and DESA plus interest, costs and attorneys fees under this COUNT.

## COUNT THREE

21. During the term of his employment, on or about September, 2005, at Defendant's headquarters in Stamford, CT, VINYA and DESA informed BARALIU that the CFO of the company had decided to leave, and made promises to, and entered into further contractual relationships, with BARALIU under which VINYA and DESA promised to pay BARALIU a performance bonus of $500,000 for 2005 if BARALIU continued to stay with the company.

22. Furthermore, DESA made several claims at Defendant's headquarters in front of other employees of VINYA, several times between April and November of 2005, that BARALIU's value to the Company was over $1,000,000 per year and that DESA could easily find BARALIU a job with former colleagues of DESA that would guarantee BARALIU at least $1,000,000 in compensation in 2005.

23. DESA made these comments and promises to BARALIU to convince him to stay in the employ of Defendants while other employees were leaving to accept other positions in the industry.

24. BARALIU relied on the promises and statements of VINYA and DESA, fulfilled all his obligations and requirements to receive this bonus, and continued his employment with VINYA, thereby foregoing other potential employment opportunities, as he declined calls for employment interviews with other companies and did not pursue other opportunities.

25. Despite these promises and contractual obligations, VINYA and DESA have refused to pay BARALIU this $500,000 bonus, ignoring several demands by BARALIU for its payment.

26. Therefore, BARALIU seeks damages of $500,000 under the terms of this promise and contractual obligation by VINYA and DESA plus interest, costs and attorneys fees under this COUNT.

**COUNT FOUR**

27. During the term of his employment, in July of 2005, at Defendants' headquarters in Stamford, CT VINYA and DESA made promises to, and entered into further contractual relationships, with BARALIU under which VINYA and DESA promised to grant BARALIU two and one half percent (2.5%) ownership in Vinya Capital, L.P. and the right to buy seven and one half percent (7.5%) ownership in Vinya Capital, L.P. at a discounted price, with the required paperwork to be completed by 15 August 2005.

28. BARALIU received this paperwork, signed by DESA, granting BARALIU the 2.5% ownership in Vinya Capital, L.P. on or about September of 2005.

29. BARALIU did not receive any documentation regarding his right to purchase 7.5% of Vinya Capital, L.P. at a discounted price, despite VINYA and DESA's granting of that right to him.

30. BARALIU relied on these promises of VINYA and DESA, fulfilled all his obligations and requirements to receive this grant of ownership and right to purchase, and continued his employment with VINYA, thereby foregoing other potential employment opportunities in the industry.

31. Despite these promises and contractual obligations, VINYA and DESA have refused to complete this grant to BARALIU of this two and one half percent ownership, complete this right to purchase seven and one half percent ownership or make payment of the value of this

ownership to BARALIU in lieu of the actual grants or rights to purchase, ignoring several demands by BARALIU for such payment or grant or rights.

32. Therefore, BARALIU seeks damages, to be proven at the trial of these matters, under the terms of these promises and contractual obligations by VINYA and DESA, of not less than $1,000,000 based on the value of VINYA of $10,000,000 at that time, minus the cost of any such purchase under BARALIU's right to purchase plus interest, costs and attorneys fees under this COUNT.

## COUNT FIVE

33. Prior to BARALIU's employment by Defendants VINYA and DESA, while negotiating BARALIU's employment contract in New York, on or about 17 August 2004, VINYA, through its Principal and Owner, DESA, made knowingly false statements to BARALIU regarding the financial strength of VINYA, the amount of investment DESA had made and was continuing to make in VINYA, the amount of investments other financial institutions were making in VINYA, including that Vega Asset Management had committed to seed VINYA with an investment of $250 million, and that Goldman Sachs had orders in the range of $1.3 Billion to invest in VINYA, but that DESA had decided to close the fund at $500 million and that the fund would start with $500 million in Q4 of 2004. All of these knowingly false statements were made by DESA in order to have BARALIU rely on these statements and to induce BARALIU to accept employment with Defendants, which BARALIU did.

34. In April of 2005, at Defendants' headquarters in Stamford, CT, VINYA, through it Principal and Owner, DESA, the Defendants made knowingly false claims that "Country EQ" was going to invest over $500 million in VINYA in 2005 and 2006.

35. In May of 2005, at Defendants' headquarters in Stamford, CT, DESA made knowingly

false statements to BARALIU that DESA was investing $1,000,000 in VINYA by 1 June 2005 to finance VINYA's operations through the end of 2006, an investment that was never made.

36. In addition, several times between April and November of 2005, at Defendants' headquarters in Stamford, CT, DESA made knowingly false claims that MBIA was going to invest $50 to $100 million in Vinya Capital, L.P., despite the fact that this would be in violation of SEC Regulation Fin 46, which prevents MBIA from being invested more than 50% of VINYA's total assets under management. DESA represented to BARALIU that he was a personal friend of MBIA's CEO at the time.

37. DESA knew, or should have known, that an investment by MBIA of the amounts he informed BARALIU that MBIA was going to invest would be a violation of SEC regulations. Nevertheless, DESA continued to make these false statements to convince BARALIU to continue his employment with VINYA, and failed to disclose this information of possible SEC violations to BARALIU, an employee and owner of VINYA.

38. In fact, VINYA's assets under management during 2005 reached a maximum of $58.3 million, and ultimately dropped below $20 million, making MBIA's actual investment of $10 million potentially in violation of SEC regulations, exposing VINYA, DESA and BARALIU, as an employee and owner of VINYA, to potential legal and regulatory violations and SEC sanctions.

39. These statements were made by DESA to BARALIU on behalf of VINYA from April 2004 to November 2005, at Defendants' headquarters in Stamford, CT, to induce BARALIU to forego payment of promised bonuses of approximately $150,000, to forego granted ownership of 2.5% of Vinya Capital, L.P., to forego promised ownership of an additional 7.5%, at a deep discount, and to forego other potential employment opportunities in the industry as well as

expected bonuses in 2004 and 2005. DESA and VINYA intended BARALIU to rely on these knowingly false statements.

40. In fact, BARALIU did rely on these false statements, by DESA and VINYA, to his detriment, and was induced through this fraud and misrepresentation to forego payment of promised and potential bonuses totaling approximately $2,000,000 and ownership rights valued at $1,000,000, at that time.

41. Therefore, BARALIU seeks damages of $3 million from VINYA and DESA plus punitive damages and interest, costs and attorneys fees under this COUNT for fraud and misrepresentation.

## COUNT SIX

42. On, or about November 28, 2005, at Defendants' headquarters in Stamford, CT, VINYA and DESA presented BARALIU with a Separation Agreement and demanded that BARALIU accept and sign it immediately without allowing BARALIU the opportunity to have the agreement reviewed by his counsel.

43. When BARALIU refused to sign and accept the agreement, his employment was wrongfully terminated, on 2 December 2005, based on false claims by DESA that BARALIU had violated company policy and further false comments by DESA about his job performance.

44. Due to this wrongful termination of his employment, and damage to his professional reputation, BARALIU was unable to find comparable employment and compensation for a period of two months and was forced to accept employment at a lower compensation for 2006, less than his experience and expertise should warrant.

45. As an example, BARALIU was ranked in 2007 by Trader Magazine, a reputable

financial journal, among the top 30 traders under 30 years of age, in the world, placing BARALIU's earning potential above $1,000,000 a year.

46. This earning potential was confirmed publicly by DESA several times during BARALIU's employment by VINYA. Yet, due to Defendants' wrongful termination of BARALIU's employment, and comments and accusations regarding BARALIU's employment with VINYA, BARALIU's total compensation while employed by VINYA, and subsequent to his wrongful termination has remained well under this $1,000,000 level. In addition, this wrongful termination and false accusations by the Defendants will also affect BARALIU's future earnings.

47. Defendants, through DESA, also made knowingly false statements about BARALIU, claiming that he violated company policy in disclosing investor information. In fact, BARALIU merely gave contact information of a friend (after receiving his prior approval), who happened to be a former investor and partner in VINYA, to another friend, a former CFO at VINYA.

48. In addition, DESA refused to provide a performance appraisal or reference after terminating BARALIU's employment despite acknowledging and recognizing his excellent job performance while BARALIU was employed by VINYA.

49. These statements made by DESA, and DESA's refusal to provide an employment reference, damaged Plaintiff's professional reputation, interfered with his career search efforts, and affected his earning potential by more than $1,000,000 per year, to be proven at the trial of these matters.

50. Therefore, BARALIU seeks $3,000,000 plus punitive damages, interest, costs and attorneys fees under this COUNT for wrongful termination and defamation.

## COUNT SEVEN

51. VINYA and DESA had knowledge that these false accusations would damage BARALIU's career, would interfere with his employment prospects and that BARALIU's wife was expecting a child.

52.  Further, VINYA's and DESA's false accusations and misrepresentations regarding BARALIU's employment performance, VINYA's and DESA's wrongful termination of BARALIU's employment, and VINYA's and DESA's refusal to pay BARALIU his bonuses and grant the promised ownership were all made to intentionally inflict emotional distress on BARALIU, which they did.

52. In fact, due to these actions by DESA and VINYA, BARALIU was unable to finalize the purchase of his home, and instead had to relocate into an apartment, while accepting new employment more than 70 miles from his home. This forced BARALIU's wife to switch her doctor late in her pregnancy and put BARALIU under further stress. DESA was well aware of BARALIU's situation and he tried to coerce BARALIU into accepting an inadequate severance and termination agreement without even giving BARALIU the opportunity to review it with his counsel.

54.  Therefore, BARALIU seeks $2,000,000 plus punitive damages, interest, costs and attorneys fees under this COUNT for intentional infliction of emotional distress.

## REQUEST FOR RELIEF

The Plaintiff, having been damaged by the actions of the Defendants, seeks the following forms of relief:

1. Compensatory damages as pled in the Counts of this Complaint,

2. Punitive damages,

3. Attorneys fees, interest and costs,

4. Such other relief as the Court deems just and equitable.

                          **PLAINTIFF,**
                          **BLERON BARALIU,**

                          By:          /s/
                             Alfred J. Smith, Jr., Esq. (CT01381)
                             706 Bedford Street
                             Stamford, CT 06901
                             Tel. (203) 359-3200
                             Fax. (203) 348-8092
                             Email: ajslaw706@aol.com

## CERTIFICATION

I hereby certify that a copy of the above document was served upon the following, by email and first class mail:

Morlan Ty Rogers, Esq.
Vandenberg & Feliu
110 East 42nd Street, Suite 1520
New York, NY 10017
Email: mtrogers@vanfeliu.com

                                        /s/
                               Alfred J. Smith, Jr., Esq.

**October 5, 2007**